JOHNSTONE, Justice.
A purported assignee of four owners of real estate sues a prospective buyer for specific performance of a purported contract to sell and to buy the land. On certiorari review, we determine that specific performance is not due.
Jeff 0. Wise, Joan C. Wise, D. Lloyd Bowers, and Carolyn M. Bowers (hereinafter “original owners”) owned a parcel of real estate. In December 1995, Ronald Carlson, an agent of A.B./Wildwood (hereinafter “A.B.”), negotiated with William H. Moss, the original owners’ real estate agent, to purchase the parcel. Thereafter, Moss drafted a contract instrument for the sale and purchase of the parcel. The instrument was later edited by hand many times. (C.R.63-64.) This edited instrument is hereinafter called “the agreement,” but its validity is not assumed by this reference.
The purchase price in “the agreement” had been crossed out and rewritten a number of times. Only one of the original owners — D. Lloyd Bowers — initialed the changes to the purchase price. Only three of the original owners — Jeff 0. Wise, D. *786 Lloyd Bowers, and Carolyn M. Bowers— signed “the agreement.” Joan C. Wise did not sign “the agreement.” On March 13, 1996, all four of the original owners transferred the property by general warranty deed, not to A.B., but to WBT, L.L.C. (hereinafter “WBT”), a limited liability corporation whose members included Jeff 0. Wise and D. Lloyd Bowers, who were two of the original owners, and Bowers’s accountant, “in consideration of the sum of TWO HUNDRED TEN THOUSAND EIGHT HUNDRED NINETY-FOUR AND NO/lOO DOLLARS ($210,894.00), and other good and valuable consideration.” (C.R.125-27.) A.B. did not know about this property transfer.
On January 28, 1997, WBT sued A.B. to enforce “the agreement.” WBT sought specific performance and damages for the breach. On May 29, 1998, the trial court granted A.B.’s motion for summary judgment, and WBT appealed. The Court of Civil Appeals reversed the summary judgment entered in favor of A.B. WBT, L.L.C. v. AB./Wildwood Ltd. Partnership, 793 So.2d 779 (Ala.Civ.App.1999). On November 18, 1999, this Court granted A.B.’s petition for a writ of certiorari to determine whether the Court of Civil Appeals erroneously found that a valid contract and a valid assignment of that contract existed.
In its order granting A.B.’s motion for summary judgment, the trial court decided 1) that WBT had standing to bring suit because “[t]he gauge of the conveyance is certainly broad enough to convey any rights the original owners may have had in the sale of the property”; 2) that “the agreement” was void under the Statute of Frauds because “[tjhere [was] no clear expression of consideration”; and 3) that “the agreement” was void for lack of mutuality because “[i]f the original owners were sued by A.B. for specific performance of the contract or for damages for its breach, its claim would fail.” (C.R.148-51.) The Court of Civil Appeals held 1) that WBT had standing to bring suit by virtue of the conveyance language in the deed; 2) that “the agreement” was not void under the Statute of Frauds; and 3) that “the agreement” was not void for lack of mutuality. We now reverse the Court of Civil Appeals and remand the cause for reinstatement of the summary judgment in favor of A.B. because, first, “the agreement” was void for lack of mutuality, and, second, WBT was without standing to sue for specific enforcement of “the agreement” inasmuch as the deed from the original owners to WBT did not constitute an assignment of “the agreement.”

I. Mutuality and Validity

A.B. contends that its contract with the original owners was void for lack of mutuality. The trial court found as follows:
“[T]here is no mutuality of obligation or mutuality of remedy between the proposed sellers and the purchaser. It is undisputed that not all of the sellers signed the document in question. Not all of them initialled or otherwise indicated their assent to the charges on the face of the document. If the defendant were attempting to enforce this agreement, it could not do so because not all of the owners are bound by it. While it was addressing an issue of arbitrability, the Alabama Supreme Court held in NoHhcom, Ltd., v. James, 694 So.2d 1329, 1334 (Ala.1997), that if there is no mutuality of remedy, a contract cannot be specifically enforced. In this case, there is no mutuality of either obligation or remedy. If the original owners were sued by A.B./Wildwood for specific performance of the contract or for damages for its breach, its claim would fail. The *787 contract is not enforceable for this reason.”
(C.R.151.) The Court of Civil Appeals reversed, finding:
“The seller concedes that it is obligated to perform the sales contract, i.e., to sell the property to the purchaser, and that if it breaches any provision of the sales contract then the purchaser is entitled to enforce the appropriate damages and remedies provisions of the sales contract. The purchaser, as well as the seller, is bound by the sales contract, i.e., it is bound to purchase the property, and the seller is entitled to enforce the appropriate damages and remedies provisions upon the purchaser’s breach. Because each promise is consideration of the other promise, the sales contract is •not void for lack of mutuality. [Marcrum v. Embry, 291 Ala. 400, 403, 282 So.2d 49, 51 (1973).]”
793 So.2d at 782. We note that the “seller’s [concession] that it is obligated to perform” is no concession at all, as it serves the self-interest of the seller in the very litigation .where the “concession” is made.
In a well-reasoned dissent, Judge Yates recognized that “the agreement” was “no valid promise to sell, because one of the original property owners did not sign the contract document.” 793 So.2d at 784. We agree that, because only three of the four original owners signed “the agreement” purportedly between the original owners and A.B., “the agreement” was void for lack of mutuality.
“The doctrine of mutuality of remedy originally held that a party to a contract may not obtain specific performance of the other party’s obligation under the contract if the party seeking specific performance cannot be compelled to specifically perform. This Court, in a 1931 exposition of the doctrine, relied largely on Pomeroy’s Equity Jurisprudence:
“ ‘Appellant further invokes the doctrine of mutuality of equitable remedy. All that this doctrine (of mutuality of equitable remedy) requires is that the situation of the parties be such that the court, in decreeing specific performance by the respondent, will have the physical power and ability to compel the complainant to perform his obligation and not be involved in complicated business affairs or operations. That is to say, “In equity, however, where it is sought to secure a decree for the specific performance of a contract, the right to such relief depends upon the existence in the defendant of the right to similar relief. Generally, if this remedy is not mutual, the court, in the exercise of its discretionary powers, will refuse to assume jurisdiction to grant relief of this character to either party.... ” 333 Ill. 494, 165 N.E. 131, 65 A.L.R. page 45.
[[Image here]]
“ ‘In his work on Equity Jurisprudence, Mr. Pomeroy noted the confusion resulting from misapprehension of the meaning of the doctrine of mutuality and expounded the doctrine in unambiguous terms (volume 5, §§ 2191 to 2194); and in section 2191, he makes the following statement in his notes: “The rule as to mutuality is not a rule of reciprocity — that relief will be denied unless defendant, if he had seen fit to sue instead of the plaintiff suing, would have succeeded in his suit; but so far as it can be justified at all, is merely designed to secure performance on the plaintiffs part of his executory promise by the one decree in equity. ’ ...
*788 “‘And thus he states the rule (5 Pom. Eq. Jur. pp. 4923, 4924, § 2191): “ ‘Equity will not compel specific performance by a defendant, if after performance the common-law remedy of damages would be his sole security for the performance of the plaintiffs side of the contract.’ 3 Columbia Law Rev. 1, by Professor J.B. Ames. ‘The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches on plaintiff’s part.’ This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality.’”
“General Securities Corp. v. Welton, 223 Ala. 299, 305-06, 135 So. 329, 334-35 (1931).
“The Court similarly applied a limited version of the doctrine of mutuality of remedy in Pierce v. Watson, 252 Ala. 15, 39 So.2d 220 (1949). After discussing criticisms of and limitations on the rule, the Court stated:
“ ‘We think it may be said as a general proposition that the rule of mutuality is satisfied if the decree of specific performance operates effectively against both parties and gives each the benefit of a mutual obligation.’
“252 Ala. at 18, 39 So.2d at 222.”
Northcom, Ltd. v. James, 694 So.2d 1329, 1336 (Ala.1997) (emphasis added). Therefore, for the absence of execution by one of the original owners, “the agreement” was void for lack of mutuality because, although the trial court could have ordered A.B. to pay for the land if it were conveyed to A.B., the trial court could not have legally ordered all four original owners to convey the land to A.B., as required by the doctrine of mutuality of remedy.

II. Assignment

Although we find that a valid contract did not exist between the original owners and A.B., we will address WBT’s contention that, in transferring title of the property to WBT by a general warranty deed, the original owners successfully assigned their right to seek specific performance of the contract against A.B. to WBT. For the purposes of this analysis only, we will, arguendo, treat “the agreement” as a valid contract for the sale of the land by the original owners, as promi-sors-to-sell, to A.B., as promisor-to-buy.
In order to constitute an assignment,
“[tjhere must be an affirmative showing of an intent to assign. Strickland & Co. v. Lesesne & Ladd, 160 Ala. 213, 49 So. 233 (1909). ‘The oumer must do or say something which would indicate a transfer of his claim or right to another.’ 160 Ala. at 217, 49 So. 233 (emphasis added).”
Russell v. Birmingham Oxygen Serv., Inc., 408 So.2d 90, 93 (Ala.1981). See also West v. Founders Life Assurance Co., 547 So.2d 870 (Ala.1989). In the case before us, the trial court and the Court of Civil Appeals found that the broad language of the deed encompassed the original owners’ intent to assign rights under “the agreement.” [1]
*789 Having made “the agreement,” however, what claim or right did the original owners have that might be assignable? They had only the claim or right to the agreed purchase price of the real estate once they conveyed it to A.B. The record before us contains no assignment instrument or any other affirmative showing of an intent to assign this very limited right to WBT. What the record does show, rather, is that the original owners did not assign “the agreement,” but, instead, committed an outright violation of it and of A.B.’s rights under it.
As soon as the original owners, as the promisors-to-sell, and A.B., as the promi-sor-to-buy, made “the agreement,” equitable ownership of the real estate vested in A.B. Lynch v. Partin, 250 Ala. 241, 34 So.2d 2 (1948); Boozer v. Blake, 245 Ala. 389, 17 So.2d 152 (1944); and In re Health Science Prods., Inc., 183 B.R. 903 (Bankr. N.D.Ala.1995). From that moment forward, the original owners held in trust for A.B. Lynch v. Partin, supra.
A contract for the sale and purchase of real estate entitles the prospective buyer to expect the particular prospective seller who has entered the contract not only to convey the real estate and the title specified by the contract, but also to make and to honor such warranties and covenants of title as are entailed by that type of title. The value of the title may well depend on the solvency of the particular warrantor-covenantor who has contracted to sell to the prospective buyer.
Instead of honoring AB.’s equitable interest and the equitable trust in favor of A.B., the original owners purported to convey fee simple title by general warranty deed to WBT. The reservations in the deed do not make the purported transfer subject to “the agreement” or to A.B.’s rights thereunder in any way. Indeed, in the deed, the original owners covenant with WBT that the original owners “are lawfully seized in fee simple of said premises; that they are free from all encumbrances except as otherwise noted above; [and that the original owners] have a good right to sell and convey the same.... ”
Thus, the deed from the original owners to WBT does not constitute an assignment of “the agreement,” but rather constitutes a virtual repudiation of “the agreement” and A.B.’s rights and the original owners’ duties thereunder. Therefore, the deed did not confer on WBT any standing to sue A.B. for specific enforcement of “the agreement.” Moreover, any privity between the original owners and WBT exacerbates WBT’s lack of standing by implicating it in the original owners’ inequitable conduct.

III. Conclusion

WBT cannot prevail against A.B. without a valid contract to sell the land and a valid assignment of that contract. As we have explained, the purported contract (“the agreement”) was void, and an assign- *790 merit of it was nonexistent. Because WBT cannot prevail against A.B. in any event, we need not address the Statute of Frauds issue discussed by the parties and the Court of Civil Appeals. The judgment of the Court of Civil Appeals is reversed and the cause remanded with instructions to reinstate the summary judgment entered by the trial court in favor of A.B.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, and ENGLAND, JJ., concur.
SEE, J., concurs in Part II and in the judgment.
LYONS and BROWN, JJ., concur in the result.

. WBT and the Court of Civil Appeals rely heavily upon the case of Gadsden Homes, Inc. v. Alabama Financery, 248 Ala. 379, 381, 27 So.2d 626, 628 (1946), for the following proposition:
"It is well settled that a contract to sell and convey land, or an option, if not specifically prohibited in the contract, is subject to assignment and the assignee may compel specific performance. 25 R.C.L. 328, § 146; Davis v. Williams et al., 121 Ala. *789 542, 25 So. 704; Erswell v. Ford, 211 Ala. 242, 100 So. 96.”
However, Gadsden Homes addresses, and each of the cases cited therein addresses, the effectiveness of an assignment by the prospective buyer, not the prospective seller. In each case, the Court has held that the assignee could compel specific performance on the part of the prospective seller — the promisor-to-sell. Thus, these cases do not spe'ak to the issue in the case before us, whether the original owners, the promisors-to-sell, may assign their rights under "the agreement” to WBT and thereby confer standing on WBT to require specific performance by A.B., the prom-isor-to-buy. We merely point out the inapplicability of Gadsden Homes and the cases cited therein. We do not hold that an assignment by a promisor-to-sell could not be legally negotiated, drafted, and effected under any circumstances.