William **MADDOX**, Plaintiff,

v.

**USA HEALTHCARE–ADAMS, LLC,** Defendant.

**Civil Action No. 3:04CV951–M.**

United States District Court, M.D. Alabama, Eastern Division.

Dec. 20, 2004.

Donald Richard Harrison, Dadeville, AL, for Plaintiff.

Angela Catherine Cameron, Spencer A. Kinderman, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

McPHERSON, United States Magistrate Judge.

This case is pending on a complaint filed by the plaintiff William Maddox ["Mad-dox"] against Defendant USA Healthcare–Adams, LLC ["Adams"] on 6 October 2004 (Doc. # 1). Maddox alleged that the defendant terminated him from his employment because of age discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,[1] and because of his medical disability, in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. On 3 November 2004, Adams filed a Motion to Stay the Proceedings and Compel Arbitration (Doc. # 4).

Upon consideration of the applicable law, the record, and arguments presented by Adams in support of its motion and Maddox in opposition thereto, the Motion to Compel Arbitration (Doc. # 4) is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

The disputes in this case arise from Maddox's employment at Adams in Alexander City, Alabama (Doc. # 1, Compl). Maddox, a 66–year old male, was employed as a Medicare Bookkeeper from 4 March 1999 until his termination on 17 September 2003 (Doc. # 1, pp. 4–5).

Adams avers that it notified its employees that, as a term and condition of employment with the company, the employees would be bound by Adams' Dispute Resolution Program ["the Program"] and its policies and procedures (Doc. # 4, Affida-

---

1. In fact, this court lacks jurisdiction to consider age discrimination claims under Title VII because the act does not prohibit discrimination on that basis. Title VII's proscriptions include discrimination based on race, color, sex, religion, and national origin. The federal statute prohibiting age discrimination in employment is the Age Discrimination in Employment Act of 1967 ["ADEA"], codified at 29 U.S.C. § 621 et seq. The plaintiff does not mention the ADEA in his complaint. Counsel mistakenly assumed that because age discrimination complaints are investigated administratively by the Equal Employment Opportunity Commission ["EEOC"], the agency that investigates all Title VII claims, age was also a prohibited basis of discrimination under Title VII. Counsel is advised to allege the appropriate statutes in future filings.

vit of Delilah Lilly, p. 1).[2] Maddox was issued a copy of the Program, which included an arbitration agreement ("Agreement"). On 8 April 2002, Maddox signed the Agreement (Doc. # 4, Exhibit B), and it became effective on 1 June 2002 (Doc. # 4, Exhibit A, p. 1).

The Acknowledgment of Receipt of Dispute Resolution Program Agreement, which Maddox signed, states, in relevant part:

> I acknowledge receipt of the Dispute Resolution Program document. *I understand that this document governs all future claims and disputes between me and USA Healthcare, Inc.* as defined in the document. I understand that, *beginning on June 1, 2002, the Dispute Resolution Program document provides that all disputes between me and USA will be submitted to binding arbitration instead of to a court, a judge, and a jury,* and that it is my responsibility to consult with the Senior Vice President for Human Resources of the facility to which I am assigned if I have any questions ...

(Maddox's signed Acknowledgment of Receipt of Dispute Resolution Program Doc. # 4, Exhibit B)(emphasis added).

**2.** Effective June 1, 2002, you and USA mutually agree to use final and binding arbitration as the sole and exclusive means of resolving all claims and disputes between you. This means that both you and USA will be bound to use this Dispute Resolution Program ... as the sole means of dispute resolution ...

. . . . .

The "claims and disputes" that must be arbitrated in accordance with this agreement are those that would constitute an actionable claim in a court of law or equity or before an administrative tribunal (except as specified below), including, but not limited to, those relating to employment; employee welfare and pension benefit plans; termination of employment; job assignment; compensation; benefits; breach of

The following language is also included in the Program:

> **Please take the time to read the following material. IT APPLIES TO YOU. It will govern all future legal disputes between you and USA Healthcare, Inc. ("USA")**

. . . . .

> You agree to submit to final and binding arbitration any and all claims and disputes ... you may have against USA. *This means that neither you nor USA may have your claims and disputes heard or decided in a court by a judge or jury, but that all such claims and disputes between you must be heard and finally decided by an arbiter as provided below.*

. . . . .

> Excluded from this Program are claims for unemployment compensation benefits and workers' compensation benefits (except that retaliation claims must be arbitrated). Also excluded from the Program are claims by USA for injunctions or other types of equitable relief for unfair competition, the use or unauthorized disclosure of trade secrets or confidential information, or the violation of noncompetition provisions as to which

contract or promise; discrimination; personal injury; tort; and claims for violation of any federal, state, or local statute, regulation, ordinance, or common law.

. . . . .

This program is part of the employment relationship between you and USA ... *Nothing contained in this Program limits in any way an employee's right to resign his or her employment at any time for any reason or USA's right to terminate your employment for any reason.* However, your decision to accept employment or to continue without employment on or after June 1, 2002, will signify your agreement to be bound to the terms of this program.
(Doc. # 4, Affidavit of Delilah Lilly, Exhibit A, pp. 1–2 Dispute Resolution Program).

USA may seek and obtain relief from the courts. *Moreover, nothing contained in this Program shall be construed as prohibiting the filing of an administrative charge of discrimination or an unfair labor practice charge, or the reporting of alleged violations of the law to the Equal Employment Opportunity Commission, the National Labor Relations Board, or any other government agency acting pursuant to state or federal law.* (Doc. # 4, Exhibit A, pp. 1–2)(emphasis added, except for heading).

Despite the above, on 6 October 2004, Maddox brought this action against Adams, alleging that Adams violated Title VII of the Civil Rights Act of 1964, because "he was terminated by Defendant from his job as a result of his age and medical disabilities (Doc. # 1, p. 2)."

## II. STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ["FAA"], a written arbitration "provision in any . . . contract evidencing a transaction involving commerce. [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." **9 U.S.C.A. § 2 (2004).** The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. *See* **9 U.S.C. § 3 (2004).** Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *See* **9 U.S.C. § 4 (2004).**

The FAA establishes "a federal policy favoring arbitration." *Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. 927 (1983)). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital.,* 460 U.S. at 24–25, 103 S.Ct. 927. Therefore, courts must rigorously enforce agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

The FAA applies to all employment contracts not specifically exempted from the FAA (transportation workers), including statutory claims for discrimination. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Thus, the principles of arbitration law apply with equal validity to Section 1981 claims. *See Paladino v. Avnet Computer Techs. Inc.,* 134 F.3d 1054, 1062 (11th Cir.1998) (Cox and Tjoflat) ("Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration."); *also Wright v. Circuit City Stores, Inc.,* 82 F.Supp.2d 1279 (N.D.Ala.2000) (claims of racial discrimination in employment were subject to compulsory arbitration under agreement requiring arbitration of employment-related disputes, including claims arising under Title VII and 1981).

## III. DISCUSSION

### A. The Applicable Rules of Law on Arbitration

Pursuant to the FAA, a written arbitration "provision in any . . . contract evidencing a transaction involving commerce. [is] valid, irrevocable, and enforce-

able, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (2004). When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2004).

According to the United States Supreme Court, the FAA embodies a congressional declaration of a liberal federal policy in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25, 103 S.Ct. 927.

■ These principles of arbitration law apply with equal validity to Title VII claims, such as the instant one. *Bradford v. KFC Natl. Mgmt. Co.*, 5 F.Supp.2d 1311, 1312 (M.D.Ala.1998); *see also Paladino v. Avnet Computer Techs. Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (Cox & Tjoflat) ("Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration").

## B. Mandatory Arbitration of the Maddox Claims

■ The FAA requires the enforcement of arbitration agreements where a) they are part of a transaction involving interstate commerce; and b) they are valid under the general principles of contract law. Specifically the act provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, **or an agreement in writing to submit to arbitration an existing controversy arising out of a contract,** transaction, or refusal, **shall be valid,** irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (2004)(emphasis added).

### 1. Interstate Commerce

This case requires the court to examine whether interstate commerce was involved in the Maddox–Adams relationship and to apply basic principles of contract interpretation in harmony with the general federal policy in favor of arbitration. In so doing, the court finds that Adams's relationship with Maddox constitutes a contract involving interstate commerce.

The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' *Commerce Clause* power." *The Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) *citing Allied–Bruce Terminix Cos., v. Dobson*, 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Since the FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)(other internal citations omitted), "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'." *Citizens Bank,* 539 U.S. at 56, 123 S.Ct. 2037 *citing Allied–Bruce Terminix Cos., supra.*

■ The *Commerce Clause* power of the U.S. Congress " 'may be exercised in

individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control'." *Citizens Bank,* 539 U.S. at 57, 123 S.Ct. 2037 *citing Mandeville Island Farms v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). Therefore, if an organization engages in business across state lines, has any portion of its assets generated as a result of any activity across state lines, or engages in any business that may be regulated by the Congress pursuant to powers granted in the *Commerce Clause,* then FAA jurisdiction is the appropriate mechanism for settling a dispute where a valid arbitration agreement has been executed. *See Citizens Bank,* 539 U.S. at 57, 123 S.Ct. 2037.

The Commerce Clause is applicable to this case because, among other things, Adams conducts business across state lines. Adams' Assistant Administrator Delilah Lilly has provided an declaration stating that: (1) Adams purchases its office furnishings from a Wisconsin company; (2) Adams purchases its food supplies from a Maryland company; (3) Adams purchases its linens from an Illinois company; (4) Adams purchases medical supplies from a Massachusetts-based company and durable medical equipment from a Wisconsin corporation; and (5) Adams purchases maintenance supplies from a South Carolina company. Therefore, if the arbitration agreement is a valid contract between Adams and Maddox, the FAA applies to bar Maddox's claim in this court.

**2. The Arbitration Agreement**

▮ As a matter of law, if a contract is in writing, is signed, and there is adequate consideration, absent fraud or misrepresentation, the contract is binding. *Power Equipment Co. v. First Alabama Bank,* 585 So.2d 1291, 1296 (Ala.1991). Maddox signed the agreement as presented to him in writing (Doc. # 4, Exhibit B). Importantly, neither fraud nor misrepresentation have been alleged by Maddox in association with his executing the arbitration agreement. Finally, there is adequate consideration because arbitration is required for and binding on both parties. In consideration thereof, this court finds that the arbitration agreement is enforceable. *Ex parte A.B./Wildwood Ltd. Partnership* 793 So.2d 784, 787 (Ala.2000)(holding that where there is a promise in consideration of another promise, a contract is not void for lack of mutuality).

▮ The FAA creates a presumption in favor of arbitration so parties must clearly express their intent to exclude categories of claims from their arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them). Adams has explicitly excluded certain categories from arbitration. However, discrimination claims do not fall within the purview of noted exceptions.[3]

▮ The resolution of this case appears to turn on the interpretation of the language

---

**3.** Excluded from this Program are claims for unemployment compensation benefits and workers' compensation benefits (except that retaliation claims must be arbitrated). Also excluded from the Program are claims by USA for injunctions or other types of equitable relief for unfair competition, the use or unauthorized disclosure of trade secrets or confidential information, or the violation of noncompetition provisions as to which USA may seek and obtain relief from the courts ... (Doc. # 4, Exhibit A, p. 2).

[e]ffective June 1, 2002, you and USA *mutually agree* to use final and binding arbitration as the sole and exclusive means of resolving all claims and disputes between you. *This means that both you and USA will be bound to use the Dispute Resolution Program ... as the sole means of dispute resolution.*

(Doc. # 4, Exhibit A, p. 1)(emphasis added). The Supreme Court has stated that courts must construe arbitration agreements broadly, resolving all doubts in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927. *See also United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration agreement is not susceptible of an interpretation that covers the asserted dispute.").

A broad interpretation of that principle supports Adams' contention that Maddox should be compelled to arbitrate both of the claims that he has presented to this court. The arbitration agreement became effective on 1 June 2002. Maddox filed this ADEA and ADA lawsuit on 28 October 2003, more than one year after the effective date of the arbitration agreement.

## IV.  CONCLUSION

The court has considered Maddox's complaint, Adams' arguments in support of the arbitration, and Adams' supporting documentation, including the Dispute Resolution Program and Maddox's Acknowledgment of Receipt of Dispute Resolution Program. In consideration thereof, the court finds Adams' arguments to be persuasive. Because the arbitration agreement meets the requirements of 9 U.S.C. § 2, the court finds that it the arbitration agreement between Maddox and Adams is enforceable. Therefore, Maddox's claims in his complaint must be resolved via arbitration. *See* 9 U.S.C. § 4 (2004).

Accordingly and without ruling on the merits of the plaintiff's claims, it is hereby ORDERED as follows:

1. The defendant's Motion to Compel Arbitration (Doc. # 4) is GRANTED; and

2. Pursuant to 9 U.S.C. § 4, all parties to this litigation shall proceed with arbitration on Maddox's claims in the manner provided in the Dispute Resolution Program.

3. This action is STAYED pending arbitration, and, commencing 1 February 2004, the defendant shall file a report with the Clerk of the court every 60 days, setting forth the status of the dispute, the schedule for arbitration, and the outcome of arbitration, if applicable.