

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-28-2005

# USA v. Bruce

Precedential or Non-Precedential: Precedential

Docket No. 02-3316

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Bruce" (2005). *2005 Decisions*. Paper 1265.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1265

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 02-3316

UNITED STATES OF AMERICA,

v.

WILLIAM R. BRUCE, III,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 00-cr-00281)
District Judge: Hon. Malcolm Muir

Argued May 27, 2004

BEFORE: RENDELL and COWEN, Circuit Judges and
SCHWARZER*, District Judge

(Filed: April 28, 2005)

*Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by
designation.

G. Scott Gardner, Esq. (Argued)
2117 West 4th Street
Williamsport, PA 17701

Counsel for Appellant

Theodore B. Smith, III (Argued)
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

John J. McCann, Esq.
Office of the United States Attorney
240 West Third Street, Suite 316
Williamsport, PA 17701

Counsel for Appellee

---

OPINION

---

COWEN, Circuit Judge

William R. Bruce, III, and a co-defendant, John Cioffi Mussare, were charged in an indictment with various drug and extortion crimes. They were convicted of one count of conspiring to distribute marijuana, as well as two counts of using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894. Bruce appeals, raising constitutional and sufficiency of the evidence challenges to the extortion convictions.[1] We will affirm.

---

[1]This appeal arose out of the same incident underlying United States v. Mussare, 02-3301. The cases were consolidated

2

## I.

On January 21, 2000, Clinton James Taylor, Bruce, and Mussare met at an all-night party in Williamsport, Pennsylvania. At some point during the evening, Bruce and Mussare expressed an interest in obtaining marijuana, and Taylor indicated that his roommate, Jim Kane, might have some. On Saturday, January 22, Bruce and Mussare accompanied Taylor to his apartment. Kane did not have any marijuana, but either Taylor or Kane suggested that they could get some if Bruce and Mussare provided the money. Bruce then gave Kane $115 for the purpose of buying drugs.

Kane gave the money to Taylor, who used it to buy seven bags of heroin. Kane and Taylor intended to resell the heroin, make a profit, and use the proceeds to buy marijuana for Bruce and Mussare. It is unclear whether Mussare and Bruce knew of the heroin buying scheme, but they were present at the apartment when Taylor left with the money and when he returned with the heroin. Kane and Taylor then consumed some of the heroin themselves, after which Kane left to sell the remaining bags. Mussare and Bruce remained at the apartment, waiting for Kane to return. Kane was unable to sell the remaining bags of heroin, and did not return that night. Mussare and Bruce left Sunday morning.

On Sunday evening, Mussare and Bruce returned to the apartment for the marijuana. Kane explained that he had been

---

for the purposes of argument only. In his briefs, Mussare raised several additional constitutional and evidentiary challenges to the conviction. Bruce has indicated that he wishes to adopt Mussare's arguments as his own, under Rule 28(i) of the Federal Rules of Appellate Procedure. Because these cases were not consolidated for the purposes of decision, we will not discuss the substance of those arguments here. Those arguments are unpersuasive, however, and for the reasons stated in United States v. Mussare, 02-3301, we will affirm Bruce's conviction even in the face of the additional challenges.

3

unable to sell the heroin, and informed Mussare and Bruce that he did not have the marijuana he owed them or the money they had given him.

On Monday, January 24, 2000, Mussare, Bruce, and Taylor were together at Jason Tortelli's apartment. Several other people were also there, including David Shay. The group was drinking and smoking marijuana. At some point during the evening, Shay and Taylor were talking on the phone to Shay's girlfriend, Stacy Bardo. During that conversation, Shay punched Taylor and told Bardo that he, Bruce, and Mussare had Taylor and were looking for Kane, because he owed them money. Later in the evening, Taylor was assaulted again, this time by Bruce, who punched him in the face and then kicked him repeatedly.

Around 11:00 p.m. on January 24, Tortelli told his guests to leave. Taylor, Mussare, Bruce, Shay, and Robert Confer then went to Taylor's apartment to find Kane. Kane was not there. During the course of the night, Taylor was tied up, kicked, burned with cigarettes, pistol-whipped with a paintball gun, and beaten with various objects. The letters "I M Thief" were burned onto his torso with a heated coat hanger. Shay, Mussare, and Bruce all took part in the assault. Taylor eventually offered to call his mother to obtain the money.

The next morning, Mussare and Bruce took Taylor back to Tortelli's apartment[2], where Taylor called his mother, told her that he had been beaten, and asked her for $500 so that he could pay the people who had beaten him.[3] Mussare accompanied Taylor to his mother's house, where Taylor told his mother that Mussare had nothing to do with what happened and obtained the money from her. Taylor's mother also gave Mussare five dollars in gas money for helping her son. Taylor gave Mussare the rest of the money after they returned to the car, and Mussare dropped

---

[2]There was no phone at Taylor's apartment.

[3]Taylor initially asked his mother for $100 or $200, but Mussare was standing next to him during the call and told him to get $500.

Taylor off at home.

Taylor eventually told his parents what had really happened. They took him to the emergency room for treatment and called the police. The police searched Taylor's apartment and found evidence of the assault.

A grand jury sitting in the Middle District of Pennsylvania returned a four-count indictment against Bruce, Mussare, and Shay, charging them with controlled substance offenses and extortion offenses. Shay began to cooperate with the government, and on April 25, 2001, the grand jury returned a superseding indictment against Mussare and Bruce only. The five-count superseding indictment charged Mussare and Bruce with (1) conspiracy to possess and distribute heroin and marijuana to persons under 21 years of age; (2) aiding, abetting, and attempting to possess marijuana with the intent to distribute it to persons under 21 years of age; (3) aiding, abetting, and attempting to possess heroin with the intent to distribute it to persons under 21 years of age; (4) conspiracy to collect a debt through extortionate means; and (5) using extortionate means to collect a debt.

A jury returned a verdict acquitting Bruce and Mussare of the heroin charges, but convicting them of the extortion-related charges and conspiracy to possess marijuana. Bruce filed a motion for judgment of acquittal on counts four and five, arguing that the charges were unconstitutional and that there was insufficient evidence to support the conviction. The District Court denied that motion, and sentenced Bruce to 235 months in prison and three years of supervised release. This appeal followed.

II.

A.

Bruce argues that 18 U.S.C. § 894 is unconstitutional, because it exceeds Congress's authority under the Commerce Clause. He asserts that the statute is overly broad, because it

5

neither regulates a commercial activity nor contains a requirement that a violator's actions be connected in any way to interstate commerce. This argument is unpersuasive and contrary to existing Supreme Court precedent.

In Perez v. United States, 402 U.S. 146 (1971), the Supreme Court held that 18 U.S.C. § 894 was a valid exercise of Congress's power under the Commerce Clause. The Supreme Court recognized that the Commerce Clause gives Congress the authority to regulate three general categories of problems. "First, the use of channels of interstate commerce which Congress deems are being misused, as, for example, the shipment of stolen goods . . . or of persons who have been kidnaped. " Id. at 150 (citations omitted). "Second, protection of the instrumentalities of interstate commerce, as for example, the destruction of an aircraft . . ." Id. "Third, those activities affecting commerce." Id. The Supreme Court held that Section 894 fell into the last category, and further held that Congress had a rational basis for deciding that purely intrastate extortionate credit transactions could still have an effect on interstate commerce. Id. at 154. As such, the Supreme Court held that Section 894 was constitutional on its face and as applied to Perez, who was a low-level, local loan shark who only handled transactions in his own state. Id. It reasoned that, as long as Perez was a "member of the class which engages in 'extortionate credit transactions' as defined by Congress," then the statute was properly applied. Id. at 152-53.

More recently, the Supreme Court has stated that a valid exercise of congressional power under the Commerce Clause requires more than a simple assertion that the activity Congress seeks to regulate has a substantial effect on interstate commerce. United States v. Lopez, 514 U.S. 549 (1995). Nevertheless, Lopez did not implicitly overrule all of the Supreme Court's prior Commerce Clause cases. See, e.g., Citizens Bank v. Alafabco, Inc., 539 U.S. 52 (2003). In both Lopez and Citizens Bank, moreover, the Supreme Court cited Perez with approval, for the proposition that intrastate extortionate credit transactions have a substantial effect on interstate commerce. Citizens Bank, 539 U.S. at 58; Lopez, 514 U.S. at 559-60.

6

Bruce also argues that Section 894 is unconstitutional as applied to this case, because the drug transaction and subsequent beating was purely local in nature, and neither he nor Mussare are "known loan-sharks" or members of organized crime. This argument is also unpersuasive. Although Congress had the links between organized crime and loan sharks in mind when it passed Section 894, the statute does not make the extortionate collection of a debt illegal only in cases of known "loan sharks" or members of organized crime. Perez, 402 U.S. at 154-56. Instead, "[t]he term 'creditor,' with reference to any given extension of credit, refers to any person making that extension of credit, or to any person claiming by, under, or through any person making that extension of credit." 18 U.S.C. § 891 (2). Under this definition, the statute will reach individuals such as Bruce and Mussare, who act solely in an intrastate context and who are not members of organized crime or loan sharks in the traditional sense. "Where the class of activities is regulated, and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class." Perez, 402 U.S. at 154 (quoting Maryland v. Wirtz, 392 U.S. 183, 193 (1962) (overruled on other grounds)). The statute is constitutional as applied to Bruce and Mussare.

B.

Bruce next argues that there was insufficient evidence to support the conviction under Section 894. Review of a verdict for sufficiency of the evidence is plenary. United States v. Rosario, 118 F.3d 160, 163 (3d Cir. 1997). We will reverse a jury verdict for insufficiency of the evidence "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." United States v. Anderson, 108 F.3d 478, 481 (3d Cir. 1997) (citation omitted).

Section 894 provides:

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of extortionate means
     (1) to collect or attempt to collect any

7

extension of credit, or

   (2) to punish any person for the
nonrepayment thereof, shall be fined under this
title or imprisoned not more than 20 years, or both.

An extension of credit is defined to mean "to make or renew any loan, or enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred." 18 U.S.C. § 891(1). Because of the disjunctive "or," if the extortionate collection of a debt involves a loan, there is no additional requirement that the parties agree to defer repayment of the loan.

The statute does not define the term "loan." The term is generally defined as "[d]elivery by one party to and receipt by another party of a sum of money upon agreement, express or implied, to repay it with or without interest." Black's Law Dictionary 936 (6th ed. 1990).

Bruce argues that "the evidence at trial clearly showed that there was no loan," arguing that he and Mussare "merely gave $115 to the victim for the purchase of Marijuana, which the victim never produced." (Appellant's Br. at 11.) Bruce cites no evidence for the proposition that the money given was not a loan, however. At trial, Taylor testified that "I borrowed–asked to borrow $115 from J. J. Mussare, and it was given to Jim Kane, and then given to me to buy heroin with." (App. at 18.) Taylor testified that he understood that the money was to be repaid, either in marijuana or in cash. (Id. at 20.) It also appears that Bruce and Mussare knew that Kane and Taylor intended to use the money to buy heroin, resell it for profit, and then buy marijuana with the proceeds. (Id.) Although Bruce now asserts that the money was more akin to an investment than a loan, because Taylor received money from Bruce and Mussare and understood that the money was to be paid back, a reasonable jury could have found that the money was a loan.

We observe that, even if a reasonable jury could not find that a loan existed, it nevertheless could reasonably conclude

8

that there was an agreement to defer repayment of the debt Kane and Taylor owed to Bruce and Mussare. Taylor received the money on Saturday, January 22. Bruce and Mussare remained at Kane's apartment until Sunday morning, while Kane and Taylor each left the apartment, first to purchase heroin and then to try to sell it for profit. Bruce and Mussare left the apartment Sunday morning, but returned that evening for their marijuana. At that point, Kane told them that he had been unable to resell the heroin, and that he had neither the marijuana he had promised them nor the money to repay them. Bruce and Mussare again left without incident. It was not until Monday evening that Bruce and Mussare assaulted Taylor. From this sequence of events, a reasonable jury could find an agreement to defer repayment of the debt. See United States v. DiPasquale, 740 F.2d 1282 , 1287 (3d Cir. 1984) ("A tacit agreement may be implied from the circumstances surrounding the creation of the debt.").[4] As such, there was sufficient evidence to support the jury's finding that an extension of credit had been made, either because the initial payment was a loan or because an agreement to postpone the payment of a claimed debt could be inferred.

## C.

Appellant challenges his sentence under United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). In light of the determination of the judges of this court that the sentencing issues appellant raises are best determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with Booker.

---

[4]Bruce urges us to reject the reasoning in DiPasquale, noting that several other federal courts have criticized its reasoning. See, e.g., United States v. Stokes, 944 F.2d 211 (5th Cir. 1991) (rejecting the reasoning of DiPasquale and noting a disagreement among the federal courts regarding the interpretation of § 894). Despite the disagreement among the federal courts, however, DiPasquale is still good law in this Circuit, and we are not inclined to revisit its holding that an agreement to defer repayment may be inferred from the circumstances surrounding the debt.

D.

For the foregoing reasons, the judgment of the District Court entered on August 12,  200 will be AFFIRMED as to the conviction.  The sentence will be vacated and the matter will be remanded to the district court for resentencing in accordance with Booker.