# THE CITIZENS BANK *v.* ALAFABCO, INC., ET AL.

No. 02–1295.   Decided June 2, 2003

PER CURIAM.

The question presented is whether the parties' debt-restructuring agreement is "a contract evidencing a transaction involving commerce" within the meaning of the Federal Arbitration Act (FAA). 9 U. S. C. §2. As we concluded in *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265 (1995), there is a sufficient nexus with interstate commerce to make enforceable, pursuant to the FAA, an arbitration provision included in that agreement.

I

Petitioner The Citizens Bank—an Alabama lending institution—seeks to compel arbitration of a financial dispute with respondents Alafabco, Inc.—an Alabama fabrication and construction company—and its officers. According to a complaint filed by respondents in Alabama state court, the dispute among the parties arose out of a series of commercial loan transactions made over a decade-long course of business dealings. In 1986, the complaint alleges, the parties entered into a quasi-contractual relationship in which the bank agreed to provide operating capital necessary for Alafabco to secure and complete construction contracts. That relationship began to sour in 1998, when the bank allegedly encouraged Alafabco to bid on a large construction contract in Courtland, Alabama, but refused to provide the capital necessary to complete the project. In order to compensate for the bank's alleged breach of the parties' implied agreement, Alafabco completed the Courtland project with funds that would otherwise have been dedicated to repaying existing obligations to the bank. Alafabco in turn became delinquent in repaying those existing obligations.

On two occasions, the parties attempted to resolve the outstanding debts. On May 3, 1999, Alafabco and the bank executed "'renewal notes'" in which all previous loans were

restructured and redocumented. 872 So. 2d 798 (Ala. 2002). The debt-restructuring arrangement included an arbitration agreement covering "'all disputes, claims, or controversies.'" That agreement provided that the FAA "'shall apply to [its] construction, interpretation, and enforcement.'" *Id.*, at 799. Alafabco defaulted on its obligations under the renewal notes and sought bankruptcy protection in federal court in September 1999.

In return for the dismissal of Alafabco's bankruptcy petition, the bank agreed to renegotiate the outstanding loans in a second debt-restructuring agreement. On December 10, 1999, the parties executed new loan documents encompassing Alafabco's entire outstanding debt, approximately $430,000, which was secured by a mortgage on commercial real estate owned by the individual respondents, by Alafabco's accounts receivable, inventory, supplies, fixtures, machinery, and equipment, and by a mortgage on the house of one of the individual respondents. *Id.*, at 800. As part of the second debt-restructuring agreement, the parties executed an arbitration agreement functionally identical to that of May 3, 1999.

Within a year of the December 1999 debt restructuring, Alafabco brought suit in the Circuit Court of Lawrence County, Alabama, against the bank and its officers. Alafabco alleged, among other causes of action, breach of contract, fraud, breach of fiduciary duties, intentional infliction of emotional distress, and interference with a contractual or business relationship. Essentially, the suit alleged that Alafabco detrimentally "'incur[red] massive debt'" because the bank had unlawfully reneged on its agreement to provide capital sufficient to complete the Courtland project. *Id.*, at 799. Invoking the arbitration agreements, the bank moved to compel arbitration of the parties' dispute. The Circuit Court ordered respondents to submit to arbitration in accordance with the arbitration agreements.

The Supreme Court of Alabama reversed over Justice See's dissent. Applying a test it first adopted in *Sisters of the Visitation* v. *Cochran Plastering Co.*, 775 So. 2d 759 (2000), the court held that the debt-restructuring agreements were the relevant transactions and proceeded to determine whether those transactions, by themselves, had a "substantial effect on interstate commerce." 872 So. 2d, at 801, 803. Because there was no showing "that any portion of the restructured debt was actually attributable to interstate transactions; that the funds comprising that debt originated out-of-state; or that the restructured debt was inseparable from any out-of-state projects," *id.,* at 805, the court found an insufficient nexus with interstate commerce to establish FAA coverage of the parties' dispute.

Justice See in dissent explained why, in his view, the court had erred by using the test formulated in *Sisters of the Visitation,* in which the Supreme Court of Alabama read this Court's opinion in *United States* v. *Lopez,* 514 U. S. 549 (1995), to require that "a particular contract, in order to be enforceable under the Federal Arbitration Act must, by itself, have a substantial effect on interstate commerce." 872 So. 2d, at 808. Rejecting that stringent test and assessing the evidence with a more generous view of the necessary effect on interstate commerce, Justice See would have found that the bank's loans to Alafabco satisfied the FAA's "involving commerce" requirement.

## II

The FAA provides that a

> "written provision in any maritime transaction or a contract *evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2 (emphasis added).

The statute further defines "commerce" to include "commerce among the several States." §1. Echoing Justice See's dissenting opinion, petitioner contends that the decision below gives inadequate breadth to the "involving commerce" language of the statute. We agree.

We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos.*, 513 U. S., at 273–274. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry* v. *Thomas*, 482 U. S. 483, 490 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of interstate commerce," *Allied-Bruce Terminix Cos.*, *supra*, at 273 (internal quotation marks, citation, and emphasis omitted).

The Supreme Court of Alabama was therefore misguided in its search for evidence that a "portion of the restructured debt was actually attributable to interstate transactions" or that the loans "originated out-of-state" or that "the restructured debt was inseparable from any out-of-state projects." 872 So. 2d, at 805. Such evidence might be required if the FAA were restricted to transactions actually "'in commerce,'" *Gulf Oil Corp.* v. *Copp Paving Co.*, 419 U. S. 186, 195–196 (1974), but, as we have explained, that is not the limit of the FAA's reach.

Nor is application of the FAA defeated because the individual debt-restructuring transactions, taken alone, did not have a "substantial effect on interstate commerce." 872 So. 2d, at 803. Congress' Commerce Clause power "may be exercised in individual cases without showing any

specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control." *Mandeville Island Farms, Inc.* v. *American Crystal Sugar Co.*, 334 U. S. 219, 236 (1948). See also *Perez* v. *United States*, 402 U. S. 146, 154 (1971); *Wickard* v. *Filburn*, 317 U. S. 111, 127–128 (1942). Only that general practice need bear on interstate commerce in a substantial way. *Maryland* v. *Wirtz*, 392 U. S. 183, 196–197, n. 27 (1968); *NLRB* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 37–38 (1937).

This case is well within our previous pronouncements on the extent of Congress' Commerce Clause power. Although the debt-restructuring agreements were executed in Alabama by Alabama residents, they nonetheless satisfy the FAA's "involving commerce" test for at least three reasons. First, Alafabco engaged in business throughout the southeastern United States using substantial loans from the bank that were renegotiated and redocumented in the debt-restructuring agreements. Indeed, the gravamen of Alafabco's state-court suit was that it had incurred " 'massive debt' " to the bank in order to keep its business afloat, and the bank submitted affidavits of bank officers establishing that its loans to Alafabco had been used in part to finance large construction projects in North Carolina, Tennessee, and Alabama.

Second, the restructured debt was secured by all of Alafabco's business assets, including its inventory of goods assembled from out-of-state parts and raw materials. If the Commerce Clause gives Congress the power to regulate local business establishments purchasing substantial quantities of goods that have moved in interstate commerce, *Katzenbach* v. *McClung*, 379 U. S. 294, 304–305 (1964), it necessarily reaches substantial commercial loan transactions secured by such goods.

Third, were there any residual doubt about the magnitude of the impact on interstate commerce caused by the particu-

lar economic transactions in which the parties were engaged, that doubt would dissipate upon consideration of the "general practice" those transactions represent. *Mandeville Island Farms, supra,* at 236. No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause. *Lewis* v. *BT Investment Managers, Inc.,* 447 U. S. 27, 38–39 (1980) ("[B]anking and related financial activities are of profound local concern. . . . Nonetheless, it does not follow that these same activities lack important interstate attributes"); *Perez, supra,* at 154–155 ("Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce").

The decision below therefore adheres to an improperly cramped view of Congress' Commerce Clause power. That view, first announced by the Supreme Court of Alabama in *Sisters of the Visitation* v. *Cochran Plastering Co.,* 775 So. 2d 759 (2000), appears to rest on a misreading of our decision in *United States* v. *Lopez,* 514 U. S. 549 (1995). *Lopez* did not restrict the reach of the FAA or implicitly overrule *Allied-Bruce Terminix Cos.*—indeed, we did not discuss that case in *Lopez.* Nor did *Lopez* purport to announce a new rule governing Congress' Commerce Clause power over concededly economic activity such as the debt-restructuring agreements before us now. 514 U. S., at 561. To be sure, "the power to regulate commerce, though broad indeed, has limits," *Maryland* v. *Wirtz, supra,* at 196, but nothing in our decision in *Lopez* suggests that those limits are breached by applying the FAA to disputes arising out of the commercial loan transactions in this case.

Accordingly, the petition for writ of certiorari is granted, the judgment of the Supreme Court of Alabama is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*