The defendants, Harbar Construction Company and Denney Barrow, appeal from the trial court's denial of their motion to compel arbitration. The issue presented for review is whether the parties' sales contract and limited warranty agreements were contracts "evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2, a part of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"). On July 23, 2001, Robert Marion Willis and Catherine Willis signed a contract with Harbar Construction to purchase a house located in Shelby County. At the time of the purchase, construction of the house was not complete. Barrow is an agent for Harbar Construction. The sales contract contained an arbitration clause, which provided:
 "14. Arbitration The Seller and the Buyer acknowledge that this Agreement necessarily involves interstate commerce by virtue of the materials and components contained in the Dwelling. Each of the undersigned hereby agrees that any dispute, controversy or claim arising out of, or relating to, this Agreement or the breach thereof shall be submitted to final and binding arbitration under the Arbitration rules (Binding) of the Better Business Bureau, Inc. The decision of the Arbitrator appointed thereunder shall be final and binding and judgment on the Award may be entered in any Court of competent jurisdiction. The fees and expenses incurred shall be shared equally by both parties. Payment of arbitration fees may be required in advance of any proceedings."
On that same day, the Willises signed a limited warranty agreement. That agreement contained, as an attachment, a separate "Arbitration/Alternative Dispute *Page 99 
Resolution (ADR)" agreement, which the Willises signed. On September 14, 2001, the Willises signed another limited warranty agreement, which contained a separate agreement to arbitrate identical to the one attached to the first limited warranty agreement. The arbitration agreements attached to the limited warranty agreements provided, in pertinent part:
 "a. The Buyer and Seller agree that should an impasse between the Buyer and Seller arise as to the Seller's obligations under this Limited Warranty Agreement to repair, replace or pay to the Buyer the reasonable cost of repairing or replacing any Latent Defect covered hereunder, both parties will submit to the Alternative Dispute Resolution (ADR) program offered by the Master Builder/Master Remodelers of the Greater Birmingham Association of Home Builders to negotiate a settlement. If this Procedure is not deemed satisfactory for either party, the next step is mediation or arbitration by the Better Business Bureau of Central Alabama.
 "b. Any Controversy or claim arising from or relating to this Agreement, or the breach thereof, or any and all claims arising between the Seller and the Buyer, their successors, or assigns shall be settled by arbitration in accordance with the arbitration rules (Binding) of the Better Business Bureau, Inc., except as such rules may be modified herein. . . . The parties acknowledge and agree that the transactions contemplated by this Agreement, which include the use of materials and components from out of state in the Dwelling, involve interstate commerce as that term is used in the Federal Arbitration Act, 9 U.S.C. [§] 1 et seq."
On April 18, 2002, the Willises sued Harbar Construction, Barrow, and fictitiously named defendants involved in constructing the home, alleging breach of contract, breach of warranty, negligence, and wantonness. Specifically, they claimed that the defendants had failed to repair certain items, including the roof, that the Willises discovered were in need of repair during the preoccupancy inspection.
On September 20, 2002, Harbar Construction and Barrow filed a motion to compel arbitration, arguing that the parties had agreed to arbitration and that the parties had agreed that their transaction involved interstate commerce. Following a hearing on November 7, 2002, the trial court denied the motion. On November 18, 2002, Harbar Construction and Barrow filed a "motion to reconsider" the trial court's denial of their motion to compel arbitration. Attached to that motion were invoices, letters from suppliers, and bills of lading that, Harbar Construction and Barrow argued, showed that the underlying transaction affected interstate commerce because supplies used to construct the home came from out of state. The trial court denied the motion to reconsider. Harbar Construction and Barrow filed a notice of appeal with the supreme court. The appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
In Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759
(Ala. 2000), our supreme court determined that a contract between two Alabama parties for the remodeling of a chapel did not substantially affect interstate commerce so as to invoke the FAA. The court concluded that five factors are pertinent in determining whether a transaction affects interstate commerce: (1) the citizenship of the parties; (2) the source of the "tools and equipment" necessary to consummate the transaction; (3) the "allocation of cost of services and materials"; (4) the *Page 100 
subsequent movement, if any, of the "object of the services" across state lines; and (5) the "degree of separability from other contracts" involved in the transaction. 775 So.2d at 765-67.
While this appeal was pending, the United States Supreme Court decidedCitizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037 (2003). InCitizens Bank, the Court held that the Alabama Supreme Court's "improperly cramped" view of Congress's Commerce Clause power, first announced in Sisters of the Visitation, rested on a misreading of the Court's decision in United States v. Lopez, 514 U.S. 549 (1995).539 U.S. at 58, 123 S.Ct. at 2041. The Supreme Court held:
 "Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.' Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328
(1948)."
539 U.S. at 56-57, 123 S.Ct. at 2040.
The FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause."Perry v. Thomas, 482 U.S. 483, 490 (1987). A review of the record in the present case indicates that the house was built in Alabama by Harbar Construction, an Alabama corporation, for the Willises, who reside in Alabama. However, the majority of the materials used to construct the house were shipped into Alabama from out of state. The lighting purchased for the house was shipped from Arkansas, California, and Georgia. The drywall board supplied for the house came from Georgia and Arkansas. Two turbines installed in the house were manufactured in Arkansas. The brick used on the house was manufactured in Georgia. The vinyl flooring installed in the house was manufactured in New Jersey, and the wood flooring installed in the house was manufactured in Texas. Bath fixtures were purchased from Moen, Inc., located in North Carolina, and the shower door was shipped from Georgia. The appliances installed in the house were shipped from Georgia. The carpet installed in the house was manufactured in Georgia. The lumber used was from Mississippi and Canada. The shelving was purchased from Rubbermaid in Illinois, and the garage-door openers were purchased from Aluminum Manufacturing in Ohio. The fiberglass insulation used was manufactured in either Georgia, Kansas, or California.
In Wolff Motor Co. v. White, [Ms. 10111845, June 27, 2003] 869 So.2d 1129
(Ala. 2003), the defendants appealed from the trial court's denial of their motion to compel arbitration of the claims filed against them by the plaintiffs. The trial court denied the motion on the grounds that the plaintiffs' purchase of a car-hauler used to transport automobiles did not substantially affect interstate commerce. Our supreme court, based on the holding in Citizens Bank, reversed the judgment, holding that the transaction sufficiently involved interstate commerce to fall within the scope of the FAA because the defendants engaged in business throughout the southeastern United States. Another reason the supreme court held that the transaction in Wolff Motor Co. involved interstate commerce was that the defendants purchased substantial quantities of goods that had moved in interstate commerce. The court also held that a third reason the transaction involved interstate commerce was that the "`general practice' of the transaction at issue was of the sort subject to Congress's Commerce Clause power." *Page 101 
869 So.2d at 1134. The court also held that a car-hauler is an instrumentality of commerce and, therefore, that the transaction involved interstate commerce. The court held that any one of those reasons standing alone would be sufficient to demonstrate that the transaction involved interstate commerce and, thus, fell within the ambit of the FAA.
In the present case, the transaction involved interstate commerce because Harbar Construction purchased substantial quantities of goods used in the construction of the house that have moved in interstate commerce. "[T]he Commerce Clause gives Congress the power to regulate local business establishments purchasing substantial quantities of goods that have moved in interstate commerce." Citizens Bank, 539 U.S. at 57,123 S.Ct. at 2040, citing Katzenbach v. McClung, 379 U.S. 294, 304-05
(1964).
The trial court, in denying the motion to compel arbitration, did not have the benefit of the United States Supreme Court's recent pronouncement in Citizens Bank. However, we must reverse the trial court's order denying the motion to compel arbitration and remand the case for the trial court to enter an order staying the proceedings and compelling the Willises to arbitrate their dispute with Harbar Construction and Barrow.
REVERSED AND REMANDED.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.