CRAWLEY, Judge.
Linda May and Michael May[1] appeal from the trial court’s denial of a motion to compel arbitration. We reverse and remand as to Linda’s appeal and dismiss as to Michael’s appeal.
*614 Michael and Amy Buchanan purchased a house from Linda and Michael; after their purchase of the house, the Buchanans sued Linda, Michael, and other defendants, alleging that the fact that the house had suffered previous termite infestation and damage had not been disclosed to them. Linda and. Michael filed separate answers; Linda subsequently filed a motion to dismiss or, in the alternative, a motion to compel arbitration and to stay proceedings pending arbitration, relying upon a provision of the purchase agreement signed by the Buchanans and Linda that stated:
“24. ARBITRATION: In the event of any dispute, claim, question, or disagreement arising out of or relating to this Agreement, or the breach thereof, the parties hereto shall use their best efforts to settle such disputes, claims, questions, or disagreement. To this effect, they shall consult and negotiate in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of sixty (60) days, then upon notice by either party to the other, disputes, claims, questions, or differences shall be finally settled by arbitration in accordance with the rules of the American Arbitration Association. Within fifteen days after the commencement of arbitration, each party shall select one person to act as arbitrator, and the two selected shall select a third arbitrator within ten days of their appointment. Each of the arbitrators appointed shall be actively engaged in the business of real estate and have expertise in the process of deciding disputes and interpreting real estate contracts and transactions. Each of the arbitrators appointed shall take an oath of impartiality. The arbitration shall be held in Baldwin County, Alabama, or at such other place as may be selected by mutual agreement. The arbitrators will have no authority to award punitive damages or any other damages not measured by the prevailing party’s actual damages, and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Agreement. All fees and expenses of the arbitration shall be borne by the parties equally. However, each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs.”
Linda supported her motion with a brief in which she contended that the purchase agreement evidenced a transaction that substantially affected interstate commerce, relying on Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000); submitted with the brief were evidentiary exhibits including an affidavit by Linda; the purchase agreement; a seller’s real property statement; company information on Re/Max International, Ser-viceMaster Company, and Countrywide Financial Corporation; the Buchanans’ mortgage on the home; a settlement statement; and a wood-infestation inspection report provided by Terminix International Company.
The trial court set a hearing on Linda’s motion to compel arbitration; the record contains no filings or evidentiary materials filed by the Buchanans in response to Linda’s motion. After conducting a hearing, the trial court denied Linda’s motion; both Linda and Michael then filed notices of appeal to this court. Although originally submitted to this court, the appeals were transferred to the supreme court due to lack of subject-matter jurisdiction. These appeals were then transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
As to Michael’s appeal, the record on appeal contains no motion to compel arbi *615 tration filed by him. He states in his brief to this court that during the trial court’s hearing on Linda’s motion to compel arbitration “[e]ounsel for Michael May appeared at the, hearing and made an ore tenus [mjotion to [c]ompel [arbitration on behalf of Michael May and argued in support of an [ojrder to [c]ompel [arbitration.” Accordingly, we would conclude that this assertion could have been supported had Michael ensured that the trial court’s hearing on Linda’s motion to cpm-pel arbitration was transcribed, with the reporter’s transcript being submitted as part of the record on appeal. However, because there is nothing in the record on appeal to affirmatively show that Michael did indeed make, or argue in support of, a motion to compel arbitration, we cannot determine that he has in fact suffered a judgment that would support an appeal. See Aaron v. Aaron, 350 So.2d 1060, 1062 (Ala.Civ.App.l977)(quoting Old Southern Life Ins. Co. v. Spinato, 57 Ala.App. 416, 419, 329 So.2d 106, 108 (Civ.l976)(“ The burden is always on the appellant to perfect his appeal in the manner required by law, and it is his duty to sée that all the evidence before the trial court is in the record on appeal. The reason for this is that the appellate court is confined to the record before it in deciding the appeal. The record on appeal does not contain the transcript of evidence and, in view of the issues presented for decision, raises nothing that can be decided by this court.’ ”)(internal citations omitted)). Therefore, we dismiss Michael’s appeal.
As to Linda’s appeal, Linda argues that the trial court erred in its judgment denying her motion to compel arbitration based upon the “substantial effect on interstate commerce” standard that was adopted by our supreme court in Sisters of the Visitation, supra. On the other hand, the Bu-chanans argue that the trial court' correctly applied the standard set out in Sisters of the Visitation and, properly denied Linda’s motion to compel arbitration. However, the standard set out in Sisters of the Visitation is no longer proper as a result of the United States Supreme Court’s opinion in Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003). In Huntsville Utilities v. Consolidated Construction Co., 876 So.2d 450 (Ala.2003); our supreme court discussed the Alafabco decision as follows:
“However, in [Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037 (2003),] the United States Supreme Court ... recognized that the ‘substantial effect’ test adopted in Sisters of the Visitation ‘gave inadequate breadth’ to the language of the [Federal Arbitration Act (‘FAA’)]. The United States Supreme Court stated:
“ ‘We have interpreted the term “involving commerce” in the FAA as the functional equivalent of the more familiar term “affecting commerce”— words of art that ordinarily signal the broadest permissible exercise of Congress’ Commerce Clause power. Allied-Bruce Terminix Cos.[ Inc. v. Dobson], 513 U.S. [265], at 273-274, 115 S.Ct. 834 [(1995)]. Because the statute provides for the “enforcement of arbitration agreements within the full reach of the Commerce Clause,” Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually “in commerce”— that is, “within the flow of interstate commerce,” Allied-Bruce Terminix Cos., supra, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).
. “ ‘The Supreme Court of Alabama was therefore misguided in its search *616 for evidence that a “portion of the restructured debt was actually attributable to interstate transactions” or that the loans “originated out-of-state” or that “the restructured debt was inseparable from any out-of-state projects.” 872 So.2d at 805. Such evidence might be required if the FAA were restricted to transactions actually “ ‘in commerce,’ ” Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195-196, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), but, as we have explained, that is not the limit of the FAA’s reach.
“ ‘Nor is application of the FAA defeated because the individual debt-restructuring transactions, taken alone, did not have a “substantial effect on interstate commerce.” 872 So.2d at 808. Congress’ Commerce Clause power “may be exercised in individual cases without showing any specific effect upon interstate commerce” if in the aggregate the economic activity in question would represent “a general practice ... subject to federal control.” Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). See also Perez v. United States, 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); Wickard v. Filbum, 317 U.S. Ill, 127-128, 63 S.Ct. 82, 87 L.Ed. 122 (1942). Only that general practice need bear on interstate commerce in a substantial way. Maryland v. Wirtz, 392 U.S. 183, 196-197, n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37-38, 57 S.Ct. 615, 81 L.Ed. 893 (1937).’
“Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040.
“Thus, in light of the United States Supreme Court’s decision in Alafabco, we no longer apply the substantial-impact-on-interstate-commerce test adopted in Sisters of the Visitation, supra. As the United States Supreme Court stated, the FAA is triggered even in ‘“individual cases without showing any specific effect upon interstate commerce” if in the aggregate the economic activity in question would represent a general practice ... subject to federal control.’ Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040. Therefore, a ‘ “party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract involves a transaction affecting interstate commerce.” ’ Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala.2001) (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999)).
“... [In the event the existence of a contract calling for arbitration has not been challenged,] we need determine only whether [the] transaction affected interstate commerce or if the economic activity in question represents a general practice subject to federal control. If either of these questions can be answered affirmatively, the FAA is triggered. Alafabco, supra.”
876 So.2d at 453-55 (footnote omitted).
The Buchanans do not contest the fact that there is a contract in place that calls for arbitration; rather, they argue that Linda failed to meet her burden of proving that the transaction had a substantial effect on interstate commerce. Clearly that is no longer the test. Linda presented evidentiary submissions to the trial court indicating that the financing of the purchase of the house by the Buchanans was by a Georgia bank. We conclude that Linda therefore met her burden of proving that the purchase agreement involved a transaction that affected interstate commerce. Further, these financing activities *617 represent a general practice subject to federal control. See Alafabco, 539 U.S. at 58, 123 S.Ct. at 2041 (“ ‘[Bjanking and related financial activities are of profound local concern.... Nonetheless, it does not follow that these same activities lack important interstate attributes.’ ”)(quoting Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 38-39, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980)). The trial court’s.denial of Linda’s motion to compel arbitration is therefore reversed, and the cause is remanded for the trial court to proceed in a manner consistent with this opinion.
2020524 — REVERSED AND REMANDED.
2020575 — APPEAL DISMISSED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.

. At one time, Linda and Michael May were married; however, they are no longer married. Linda and Michael each filed a separate appeal from the trial court’s judgment. Their appeals were consolidated by order of this court.