Berroa v Nasimov (2024 NY Slip Op 50931(U))

[*1]

Berroa v Nasimov

2024 NY Slip Op 50931(U)

Decided on July 19, 2024

Supreme Court, Kings County 

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 19, 2024
Supreme Court, Kings County 

Franklin Berroa, Plaintiff,

against
Ravshan I. Nasimov and LYFT, INC., Defendant(s).

Index No. 520939/2023

Lewis Brisbois Bisgaard & Smith LLP, New York City, for Defendant Lyft, Inc.

Aaron D. Maslow, J.

The following numbered papers were read on this motion:
Submitted by Defendant Lyft, Inc. in Support of Motion
NYSCEF Doc No. 5: Notice of Motion
NYSCEF Doc No. 6: Patricia Alarcon Demetri Affirmation in Support
NYSCEF Doc No. 7: Exhibit A, Summons & Complaint
NYSCEF Doc No. 8: Exhibit B, Lyft's Answer
NYSCEF Doc No. 9: Exhibit C, Kimberly Simmons Affirmation in Support
NYSCEF Doc No. 10: Exhibit D, Lyft Terms of Service Consent History for Plaintiff
NYSCEF Doc No. 11: Exhibit E, Lyft Terms of Service, 9/30/16
NYSCEF Doc No. 12: Exhibit F, Lyft Email to Plaintiff, 8/1/19
NYSCEF Doc No. 13: Exhibit G, Lyft Terms of Service, 8/26/19
NYSCEF Doc No. 14: Exhibit H, Lyft Email to Plaintiff, 12/14/20
NYSCEF Doc No. 15: Exhibit I, Lyft Terms of Service, 12/9/20
NYSCEF Doc No. 16: Exhibit J, Lyft Email to Plaintiff, 12/3/22
NYSCEF Doc No. 17: Exhibit K, Lyft Terms of Service, 12/12/22
NYSCEF Doc No. 18: Exhibit L, Brooks v Uber Tech.
NYSCEF Doc No. 19: Exhibit M, Weissman v Revel Transit, Inc.
NYSCEF Doc No. 20: Exhibit N, Wu v Uber Tech.
NYSCEF Doc No. 21: Exhibit O, Meija v Linares.
NYSCEF Doc No. 22: Exhibit P, Coladonato v Lyft, Inc.
NYSCEF Doc No. 23: Exhibit Q, Reyes v Lyft, Inc.
NYSCEF Doc No. 24: Exhibit R, Beauduy v Siaka
NYSCEF Doc No. 25: Exhibit S, Freeman v MTM Fuel Servs., Inc.
NYSCEF Doc No. 26: Exhibit T, Hinds v American United Transp., Inc.
NYSCEF Doc No. 27: Exhibit U, Calamuci v Lyft, Inc.
NYSCEF Doc No. 28: Exhibit V, Scarlett v Thompson
NYSCEF Doc No. 29: Exhibit W, Gayle v LaKoretene
NYSCEF Doc No. 30: Exhibit X, Garcia v Yu
NYSCEF Doc No. 31: Exhibit Y, Johnson v N.Y. City Trans. Auth.
NYSCEF Doc No. 32: Exhibit Z, Jackson v Lyft, Inc.
NYSCEF Doc No. 33: Exhibit AA, Riddell v Hossain
NYSCEF Doc No. 34: Exhibit BB, Meet & Confer Letter to Plaintiff's Counsel
NYSCEF Doc No. 35: Statement of Authorization for Electronic Filing
NYSCEF Doc No. 36: Request for Judicial Intervention
Filed by Court
NYSCEF Doc No. 39: Interim Order, Motion to be Determined on Submission
No documents were submitted by Plaintiff in opposition to the motion.
Upon the foregoing papers, and the Court having elected to determine the within motion on submission pursuant to 22 NYCRR 202.8-f and IAS Part 2 Rules, Part II (Motions & Special Proceedings), Subpart C (Appearances & Post-Order Matters)), § 6 (Personal Appearances) ("All motions presumptively are to be argued in person unless the Court informs the parties at least two days in advance that it has made a sua sponte determination that a motion will be determined on submission. These instances will be rare. If a party (movant or opposition) does not want a motion determined on submission, it shall so indicate to the right of the caption in the notice of motion.)," and due deliberation having been had thereon, the within motion is determined as follows.
INTRODUCTION
This is an action commenced by Plaintiff Franklin Berroa ("Plaintiff" or "Berroa"), seeking to recover damages for alleged personal injuries sustained in a motor vehicle on July 20, 2020 ("the accident").
Berroa used the Lyft platform to arrange a ride with Defendant Ravshan I. Nasimov ("Nasimov") and was a passenger in Defendant Nasimov's vehicle when the accident occurred (see NYSCEF Doc No. 7, complaint ¶¶ 22, 24, 25, 31, 33). In addition to bringing claims against Nasimov, Berroa sued Lyft, Inc. ("Lyft") for vicarious liability due to Nasimov's alleged negligent operation of his vehicle while in his capacity as a driver for Lyft (see id. ¶¶ 22, 24, 25, [*2]27, 48-52).
In this motion, Defendant Lyft seeks the following relief:
(1) To dismiss the claims against Lyft or, in the alternative, to stay this action with respect to the claims against Lyft, and to compel Plaintiff to arbitrate the claims against Lyft pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.;
(2) Should Plaintiff wish to pursue the claim(s) against Lyft in arbitration, Plaintiff must initiate arbitration within thirty (30) days of this Court's order granting the within Motion; and
(3) For such other and further relief as this Court deems just and proper.
(NYSCEF Doc No. 5, notice of motion at 1.)
BACKGROUND
Lyft operates a peer-to-peer ridesharing software platform that, among other things, enables users who seek transportation to certain destinations ("riders") to be matched with drivers who provide rides using personal vehicles (see NYSCEF Doc No. 9, Simmons aff ¶¶ 4-5). The Lyft software platform includes Lyft's website, technology platform, and mobile device application (the "Lyft App"). The Lyft App offers a method of communication to connect drivers and riders (see id. ¶ 4). 
A user is unable to access the Lyft platform to request rides without first creating a Lyft user account via the Lyft App (see id. ¶ 7). This process requires the user to input information such as their first and last name, email address, and phone number (see id. ¶¶ 7, 8). During the account creation process the user is also required to accept Lyft's Terms of Service, which include a mutual arbitration clause requiring Lyft and the user to submit all disputes between them to arbitration — expressly including those arising out of or related to the Lyft platform and rideshare services arranged on the platform (see id. ¶ 8; NYSCEF Doc No. 11, 9/30/16 Terms of Service ¶ 17; NYSCEF Doc No. 13, 8/26/19 Terms of Service ¶ 17; NYSCEF Doc No. 15, 12/9/20 Term of Service ¶ 17; NYSCEF Doc No. 17, 12/12/22 Terms of Service ¶ 17).
After creating an account, users are prompted periodically to reaffirm their acceptance of Lyft's updated Terms of Service if they wish to continue using the Lyft Platform (see NYSCEF Doc No. 9, Simmons aff ¶ 8). Users cannot complete the account creation process or purchase rideshare services through the Lyft App unless they affirmatively accept and agree to be bound by Lyft's Terms of Service (see id.). Lyft's current Terms of Service are always available on its public website, and after a user creates a Lyft account, they may also access a full copy of Lyft's Terms of Service at any time through their own Lyft App (see id. at ¶ 9).
Plaintiff Berroa created a Lyft user account on May 31, 2015, associated with User ID 7333____________0754 (see id. ¶ 11). Plaintiff accepted Lyft's Terms and Service four times — December 2, 2016; June 27, 2020; February 3, 2021; and February 19, 2023 (see id. ¶ 12) — enabling him to purchase ride shares from Lyft on approximately 170 occasions (see id. ¶ 13).
DISCUSSION
The Federal Arbitration Act — which is expressly stated to govern the parties' arbitration agreement (NYSCEF Doc No. 13, 8/26/19 Terms of Service, ¶ 17 [a]) — strongly favors [*3]enforcement of arbitration agreements.[FN1]

A court decides two gateway issues when ruling on a motion to compel arbitration: (1) "whether the parties are bound by a given arbitration clause"; and (2) whether that clause "applies to a particular type of controversy" (Howsam v Dean Witter Reynolds, Inc., 537 US 79, 84 (2002).
Here, both are satisfied: first, Plaintiff agreed to Lyft's Terms of Service, including its conspicuous arbitration agreement; second, the scope of the agreement applies to Plaintiff's claims premised on his use of the Lyft Platform to arrange the July 20, 2020 rideshare. 
Plaintiff Is Bound By The Arbitration Agreement
Plaintiff Berroa affirmatively agreed to Lyft's Terms of Service on four occasions (NYSCEF Doc No. 9, Simmons aff ¶ 12), each version containing a conspicuous mutual arbitration clause.
The August 26, 2019 Terms of Service were in effect on the date of the Accident. Under the heading "DISPUTE RESOLUTION AND ARBITRATION AGREEMENT" (bold and capital in original), the terms stated that Lyft and Berroa "AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION" (NYSCEF Doc No. 13, 8/26/19 Terms of Service, ¶ 17 [capital in original]).
Furthermore, the introductory page of the Terms of Service stated the following, apart from other text:
"PLEASE BE ADVISED: THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND LYFT CAN BE BROUGHT (SEE SECTION 17 BELOW). THESE PROVISIONS WILL, WITH LIMITED EXCEPTION, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS. . . .
By entering into this Agreement, and/or by using or accessing the Lyft Platform you expressly acknowledge that you understand this Agreement (including the dispute resolution and arbitration provisions in Section 17) and accept all of its terms. IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU MAY NOT USE OR ACCESS THE LYFT PLATFORM OR ANY OF THE SERVICES PROVIDED THROUGH THE LYFT PLATFORM.
(Id. at 1.)
The "SEE SECTION 17 BELOW" is a blue hyperlink that takes the reader directly to the full arbitration provision within the Terms of Service (see id. ¶ 17). 
Additionally, in an email dated August 1, 2019, Lyft explicitly advised Plaintiff in advance that it was updating its Terms of Service along with a hyperlink of the version that will go into effect on August 26, 2019 (see NYSCEF Doc No. 9, Simmons aff ¶12 [b], [d], [f]; NYSCEF Doc No. 12, 8/1/19 email).[FN2]

The unrebutted evidence reflects that Plaintiff affirmatively consented to be bound by the August 26, 2019 Terms of Service — along with the conspicuous arbitration agreement therein — when he was presented with the full text of Lyft's Terms and Service directly on the screen in his Lyft App and clicked the button labeled "I Agree."[FN3]
Thus, Lyft satisfied its burden of demonstrating that the parties had an explicit and unequivocal agreement to arbitrate.
Recently, various New York trial courts have considered and enforced Lyft's mutual arbitration provision under similar facts to those presented here (e.g., Giliberti v Dixon, 2024 WL 3429839 [Sup Ct, NY County, July 11, 2024, index No. 153717/23]; Riddell v Hossain, Sup Ct, Bronx County, Barbato, J., Apr. 4, 2024, index No. 814630/22E; Jackson v Lyft, Inc., 2024 WL 1509741 [Sup Ct, NY County, Apr. 1, 2024, index No. 452283/23]; Johnson v New York City Trans. Auth., Sup Ct, Bronx County, Perez, J., Feb. 26, 2024, index No. 809275/22E; Garcia v Yu, Sup Ct, Kings County, Feb. 15, 2024, Piela Cohen, J., index No. 537310/22; Gayle v LaKoretene, Sup Ct, Kings County, Feb. 8, 2024, Piela Cohen, J., index No. 507876/23; Scarlett v Thompson, Sup Ct, Westchester County, Jan. 8, 2024, Ondrovic, J., index No. 57431/23; Hinds v American United Transp., Inc., Sup Ct, Nassau County, Dec. 4, 2023, Marber, J., index No. 609998/22; Freeman v MTM Fuel Servs., Inc., 2023 WL 8280553 [Sup Ct, Bronx County, Oct. 11, 2023, index No. 806157/22E]; Beauduy v Siaka, 2023 WL 8280565 [Sup Ct, Bronx County, Oct. 10, 2023, index No. 810890/22]; Reyes v Lyft, Inc., Sup Ct, Nassau County, Aug. 16, 2023, Daly-Sapraicone, J., index No. 612505/22; Coladonato v Lyft, Inc., Sup Ct, Westchester County, Jan. 4, 2023, Lefkowitz, J., index No. 60081/22; Williamson v Alexander, 2022 NY Slip Op 34503[U] [Sup Ct, Kings County 2022]).
Moreover, federal courts have also routinely enforced the arbitration agreement in Lyft's Terms of Service. In Osvatics v Lyft, Inc. (535 F Supp 3d 1 [D DC 2021]), for example, now-United States Supreme Court Justice Jackson evaluated Lyft's Terms of Service, finding it "well [*4]established that Lyft's method of obtaining assent to its Terms of Service—presenting the terms of the agreement and requiring users to click 'I Agree' before they can access the service constitutes a valid means of offer and acceptance" (535 F Supp 3d at 11 [citations omitted]). Justice Jackson held that Lyft's Terms of Service "formed a valid arbitration agreement, and that agreement is enforceable under the FAA" (id. at 22-23; see also Bekele v Lyft, Inc., 918 F 3d 181, 184 [1st Cir 2019] [enforcing Lyft's Terms of Service presented online where user could scroll to review all terms before clicking "I accept"]; Spain v Johnson, 2024 WL 907435, *3 [D Colo, Jan. 16, 2024] ["Ms. Spain was provided with the terms of service repeatedly and was clearly told she was agreeing to them when creating her account and when using Lyft's service. . . . That is all that is required under the law [for] her to be bound by them."]; Pepper v Tailor & Lyft, Inc., 2023 WL 6214101, *3 [ND Ill, September 24, 2023] [granting motion to compel arbitration and stay proceedings against Lyft]; Gambo v Lyft, Inc., 642 F Supp. 3d 46, 56 [D DC 2022] [granting Lyft's motion to compel arbitration in a personal injury case and finding that "(a)ny reasonable smartphone user would understand that by clicking on" Lyft's consent button, "he was agreeing to (Lyft's Terms of Service)" and the arbitration provision therein]; Austin v Lyft, Inc., 2022 WL 4095386 [ND Cal, Sept. 2, 2022] ["Here, the Court finds Austin agreed to arbitrate each of his claims asserted against Lyft. In particular, contrary to Austin's argument, Lyft has established that . . . the parties executed an arbitration agreement contained in . . . Lyft's Terms of Service."]; Person v Lyft, Inc., 2020 WL 5639804, *1 [ND Ga Sept. 9, 2020] [holding that Lyft's "arbitration agreement is valid and enforceable and precludes (Plaintiff) from bringing claims in court"]; Camilo v Lyft, Inc., 384 F Supp 3d 435, 439-440 [SDNY 2019] [applying New York law] ["[B]y clicking 'I ACCEPT' upon being presented with the updated Terms of Service, (Plaintiff) accepted the terms of the updated contact and entered into an agreement with Lyft and its subsidiaries."]; Kingsbury v Lyft, Inc., 2018 WL 905509, *2 [ND Ill, Feb. 15, 2018] [granting motion to compel arbitration where "on multiple occasions Plaintiffs agreed to broad arbitration clauses" in Lyft's Terms of Service]; Loewen v Lyft, Inc., 129 F Supp 3d 945, 966 [ND Cal 2015] [granting motion to compel arbitration and referring disputes over scope and enforceability to the arbitrator, consistent with delegation clause]). 
In line with the vast and growing case law on the matter, this Court finds the evidence sufficient to establish that the August 26, 2019 Terms of Service included an enforceable arbitration agreement to which Plaintiff assented and is bound by.
The Arbitration Agreement Covers Plaintiff's Claims
Plaintiff's claims arise out of his use of the Lyft Platform and thus fall within the scope of the arbitration clause.
The arbitration agreement expressly covered "any dispute, claim or controversy . . . arising out of or relating to . . . the Lyft Platform," "Rideshare Services" (elsewhere defined as the "driving services provided by Drivers to Riders"), and "all other federal and state statutory and common law claims." Here, Plaintiff's claims arose out of the motor vehicle accident that occurred while he was riding in Nasimov's vehicle after connecting with Nasimov via the Lyft Platform (see NYSCEF Doc No. 7, complaint ¶¶ 22, 24, 25, 27, 31, 33-37), and thus fell [*5]squarely within the scope of the arbitration clause.[FN4]

Remaining Claims
While the claims between Plaintiff and Defendant Lyft, Inc. are subject to arbitration, there is no compelling reason that the other claims in this action should not proceed to discovery and trial. This Court does not perceive that Plaintiff's claims against Lyft, Inc. are inextricably interwoven with those against Defendant Nasimov (see 21st Century N. Am. Ins. Co. v Douglas, 105 AD3d 463 [1st Dept 2013]; Weiss v Nath, 97 AD3d 661 [2d Dept 2012]).
Conclusion
Since Plaintiff's claims against Lyft are subject to the arbitration agreement within the Terms of Service, it is hereby
ORDERED, that the motion by Defendant Lyft, Inc., seeking an order, pursuant to CPLR 7503 (a) and the Federal Arbitration Act, compelling Plaintiff Franklin Berroa to submit his claims against Lyft, Inc. to arbitration is GRANTED, and only the claims as between Plaintiff and Lyft, Inc. are hereby SEVERED; and it is further
ORDERED, that said arbitration shall be initiated by Plaintiff within 30 days after notice of entry is served upon him; and it is further
ORDERED, that all remaining claims in this action shall NOT be stayed and shall proceed in this action.
E N T E R
HON. AARON D. MASLOW
Justice of the Supreme Court

Footnotes

Footnote 1:Even in the absence of an express choice-of-law provision, the FAA would govern here because the arbitration agreement here is a written provision in a contract evidencing a transaction involving commerce (Citizens Bank v Alafabco, Inc., 539 U.S. 52, 56 [2003] ["Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.' "]; see 9 U.S.C. § 2).

Footnote 2:There is a discussion as to whether such an email notification is sufficient to put the recipient on notice of the recent changes of terms (see Wu v Uber Tech., Inc. 219 AD3d 1208 [1st Dept 2023]), which this Court declines commenting on due to its academic nature in light of the broader holding.

Footnote 3:Notably, the method of electronic consent endorsed by the First Department in Brooks v Uber Tech., Inc. (216 AD3d 505 [1st Dept 2023]); Wu v Uber Tech., Inc. (219 AD3d 1208); and Mejia v Linares (219 AD3d 1251 [1st Dept 2023]) is referred to as "clickwrap" because it requires users to click a hyperlink if they wish to view the agreement. On the other hand, Lyft's method of electronic consent is referred to as "scrollwrap" because users may or must scroll through the full text of the agreement before affirmatively indicating their consent. Thus, considering Uber's "clickwrapped" Terms of Use were deemed enforceable, a fortiori, the more conspicuous "scrollwrapped" Lyft Terms of Service is all the more compelling in validity. 

Footnote 4:Even assuming, arguendo, that the scope of the agreement was at dispute, this case would still go to arbitration, as it contains a delegation clause that explicitly reserves debate over the scope of the arbitration clause for the arbitrator (see NYSCEF Doc No. 13, 8/26/19 Terms of Service, ¶ 17 [a]). The First Department has enforced similar delegation clauses in Uber's Terms of Use (see Mejia v Linares, 219 AD3d 1251 [1st Dept 2023] [terms of agreement make clear that there existed enforceable arbitration agreement to which plaintiff assented, and which delegates to arbitrator resolution of any claim regarding its enforceability]; Wu v Uber Tech., Inc. 219 AD3d 1208 [plain language of delegation provision in arbitration agreement clearly and unmistakably evinced parties' intent to delegate to arbitrator responsibility for resolving essentially any and all threshold issues]; Weissman v Revel Tr., Inc., 217 AD3d 430, 430 [1st Dept 2023] [arbitration agreement and the terms of use clearly and explicitly state that the parties agree to arbitrate any disputes concerning the use of the vehicle]; Brooks v Uber Tech, Inc., 216 AD3d at 507 ["The terms of the agreement make clear that plaintiff agreed to delegate the determination of whether his claim is subject to arbitration, including whether it covers plaintiff's claim at all, to the arbitrator."]).