*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANE DOE #1,

        Plaintiff-Appellee,

v

DR. JOHN PISPIDIKIS,

        Defendant-Appellant,

and

MEDCARE, INC., doing business as SPINAL
RECOVERY CENTER,

        Defendant.

FOR PUBLICATION
March 17, 2026
2:45 PM

No. 372831
Macomb Circuit Court
LC No. 2024-001549-NO

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

ACKERMAN, J.

The federal government "is acknowledged by all, to be one of enumerated powers" and "can exercise only the powers granted to it." *M'Culloch v Maryland*, 17 US (4 Wheat) 316, 405; 4 L Ed 579 (1819). As a result, federal statutes are constitutional only if they are an exercise of one of those enumerated powers. Consistent with that limitation, the Federal Arbitration Act applies only to, as relevant here, "commerce among the several States." 9 USC 1. Yet here, the trial court held that 9 USC 402(a), which voids arbitration agreements relating to "a sexual harassment dispute or sexual assault dispute," is not limited to contracts involving commerce. Because that holding disregards the constitutional limits on Congress's power to legislate that the statutory text itself acknowledges, we vacate the denial of summary disposition and remand for further proceedings consistent with this opinion.

## I. FACTS

In light of the procedural posture of this case, the factual record is undeveloped and largely immaterial to our disposition. In short, defendant, Dr. John Pispidikis, is a nurse practitioner and

chiropractor employed by Medcare, Inc., which does business as Spinal Recovery Center.[1] Plaintiff alleges that defendant touched her inappropriately for his own sexual gratification during the course of medical treatment. She sued defendant and Medcare, alleging, among other claims, battery and sexual battery.

Defendant, joined by Medcare, moved for summary disposition under MCR 2.116(C)(7), asserting that plaintiff had signed an arbitration agreement when she began treatment at the Spinal Recovery Center. The agreement provided that "any dispute . . . as to whether any medical services . . . were improperly, negligently or incompetently rendered, will be determined by submission to arbitration," including "any dispute that does not relate to medical malpractice." Plaintiff responded, in relevant part,[2] that the arbitration agreement was void under 9 USC 402(a). Defendant countered that § 402(a) applies only if the underlying transaction involves interstate commerce and maintained that it did not. The trial court denied defendant's motion, reasoning that defendant had not produced sufficient authority demonstrating that the transaction needed to involve interstate commerce for 9 USC 402(a) to apply. It therefore held that the agreement was invalid under that statute. Defendant now appeals by leave granted.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7). *Galea v FCA US LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018). Such a motion "is appropriately granted when a claim is barred by an agreement to arbitrate." *Id*. "Whether an arbitration agreement exists and is enforceable is a legal question that we review de novo." *Id*.

## III. DISCUSSION

In 2022, Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA). PL 117-90; 136 Stat 26. The statute provides that for a "person alleging conduct constituting a sexual harassment dispute or sexual assault dispute," "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under . . . State law and relates to the sexual assault dispute or the sexual harassment dispute."[3] 9 USC 402(a). The trial court observed that § 402(a), read in isolation, contains no express reference to interstate commerce. On that basis, it rejected defendant's argument that the statute does not control because this case has no nexus with interstate commerce.

That reasoning overlooks foundational constitutional principles. As noted, the federal government is "one of enumerated powers" and "can exercise only the powers granted to it."

---

[1] Medcare is also a defendant but not a party to this appeal, so all references to "defendant" in this opinion refer only to Dr. Pispidikis.

[2] Plaintiff raised several additional arguments in opposition to summary disposition, but the trial court did not reach them.

[3] The parties do not dispute that this case falls within the statutory definitions of "sexual harassment dispute" or "sexual assault dispute" set forth in 9 USC 401(3)-(4).

*M'Culloch*, 17 US at 405. For a federal law to be enforceable, it must rest on one of those enumerated powers, whether or not the statute expressly recites its constitutional basis. The apparent source of authority here is Congress's power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." US Const, art I, § 8, cl 3. But we need not rely on this implication alone, for we conclude that the statute—when properly read— applies only to arbitration agreements with a connection to interstate commerce.

The EFAA appears in the United States Code as chapter 4 of title 9. A review of title 9's history makes clear that the EFAA relies on Congress's commerce power. The statute began in 1925 as the United States Arbitration Act. PL 68-401; 43 Stat 883. "Until the 1940s, the United States Code was not the law, but only a compilation constituting evidence of the law," but at that time "Congress then engaged in a program to enact the Code as positive law." Feller, *Fender Bender or Train Wreck?: The Collision Between Statutory Protection of Individual Employee Rights and the Judicial Revision of the Federal Arbitration Act*, 41 St Louis U LJ 561, 561 n 1 (1997). As part of this effort, Congress directly adopted title 9 of the United States Code into positive law. PL 80-282; 61 Stat 669. It is now generally referred to as the Federal Arbitration Act (FAA),[4] with the material dating back to the original 1925 enactment codified as chapter 1 of title 9.[5]

The general rule of the FAA is to make arbitration agreements valid and enforceable. It provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4. [9 USC 2.]

---

[4] Although the 1947 codification mostly adopted the 1925 law verbatim, "[t]here was, however, one unremarked and unexplained difference," which was that the official short title was omitted. *Fender Bender*, 41 St Louis U LJ at 561 n 1. "Since that time, there has been no official name and the Act, essentially the 1925 Act, has been referred to by most courts, including the Supreme Court, as the Federal Arbitration Act, although there is no statutory basis for that appellation." *Id*.

[5] Perhaps reflecting the unofficial status of the name, courts have been inconsistent with whether the FAA is specifically only chapter 1 of title 9, or all of title 9. Compare *Bautista v Star Cruises*, 396 F3d 1289, 1296 (CA 11, 2005) ("[T]he FAA and the Convention Act comprise Chapter 1 and Chapter 2 [of title 9], respectively."), with *GE Energy Power Conversion France SAS v Outokumpu Stainless USA, LLC*, 590 US 432, 437; 140 S Ct 1637; 207 L Ed 2d 1 (2020) ("Chapter 1 of the Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements.").

The statute therefore expressly applies only to "a contract evidencing a transaction involving commerce." The statute further defines commerce to mean

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation . . . . [9 USC 1.]

We have therefore held that the statute "governs actions in both federal and state courts arising out of contracts involving interstate commerce." *Kauffman v The Chicago Corp*, 187 Mich App 284, 286; 466 NW2d 726 (1991). See also *Southland Corp v Keating*, 465 US 1, 11; 104 S Ct 852; 79 L Ed 2d 1 (1984) ("The Federal Arbitration Act rests on the authority of Congress to enact substantive rules under the Commerce Clause.").

The question presented in this appeal is how the EFAA relates to 9 USC 2. The Supreme Court has often held that the sequential order of the provisions in the FAA is significant. *New Prime Inc v Oliveira*, 586 US 105, 111; 139 S Ct 532; 202 L Ed 2d 536 (2019). And while 9 USC 2 mandates enforcement of arbitration agreements, its mandate may be "overridden by a contrary congressional command." *CompuCredit Corp v Greenwood*, 565 US 95, 98; 132 S Ct 665; 181 L Ed 2d 586 (2012) (cleaned up).

Plaintiff argues that because 9 USC 402(a) indicates that it applies "[n]otwithstanding any other provision of this title," "the EFAA is applicable regardless of what the rest of" the FAA provides. We disagree. When the EFAA was adopted, it added chapter 4 to title 9 of the United States Code. There, we find the provision rendering invalid and unenforceable arbitration agreements that relate to sexual assault and sexual harassment disputes. 9 USC 402(a). In chapter 1, § 2 provides that arbitration agreements in contracts "evidencing a transaction involving commerce" are enforceable "save upon such grounds . . . as otherwise provided in chapter 4." Chapter 4's § 402(a) then qualifies that rule—while arbitration agreements in contracts that "evidenc[e] a transaction involving commerce" are in general enforceable, such arbitration agreements are not enforceable with respect to sexual assault and sexual harassment disputes. In short, 9 USC 1-2 "define the field in which Congress was legislating" when it regulated arbitration agreements. *Bernhardt v Polygraphic Co*, 350 US 198, 201; 76 S Ct 273; 100 L Ed 199 (1956). The EFAA is therefore an exception to the general rule of 9 USC 2 and applies no more broadly than 9 USC 2 itself—that is, to transactions involving "commerce" as defined in 9 USC 1.[6]

This reading also ensures that the statute complies with the United States Constitution. Absent an interstate-commerce nexus, it is unclear what enumerated power would authorize federal regulation of arbitration agreements governing purely intrastate sexual assault or harassment claims. Plaintiff identifies no alternative constitutional basis, and the statute itself

---

[6] Given how new the EFAA is, there are few reported cases construing it, but at least one federal district court has required a relationship to interstate commerce to apply it. See *Mangum v Ross Dress for Less, Inc*, 777 F Supp 3d 519, 532 (EDNC, 2025).

recites none. Requiring an interstate commerce connection ensures that the statute remains within constitutional bounds.

None of this resolves whether the EFAA ultimately applies here. The Supreme Court has interpreted "involving commerce" in 9 USC 2 as "the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v Alafabco, Inc*, 539 US 52, 56; 123 S Ct 2037; 156 L Ed 2d 46 (2003). The FAA is not confined to transactions "within the flow of interstate commerce." *Id*. at 56. Rather, "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Id*. at 56-57 (cleaned up). The statute also applies "even if the parties did not contemplate an interstate commerce connection," so long as the transaction affects interstate commerce. *Allied-Bruce Terminix Cos, Inc v Dobson*, 513 US 265, 281; 115 S Ct 834; 130 L Ed 2d 753 (1995).

Accordingly, it is necessary to determine whether this contract involved a "transaction involving commerce" under 9 USC 2 before the EFAA may apply. Because the trial court applied the EFAA without making that determination, its ruling cannot stand.[7] We therefore vacate the order denying defendant's motion for summary disposition and remand for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett

---

[7] Plaintiff raises alternative grounds for affirmance, including that the arbitration agreement does not bind defendant and that it contravenes public policy. The trial court did not address these arguments, having concluded that the EFAA applied without first determining whether the contract involved commerce under 9 USC 2. Because we "need not address an issue that was not the basis of the trial court's decision," *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014), we decline to consider them. Our decision is without prejudice to plaintiff renewing those arguments on remand.