Filed 1/7/26  Barbosa v. Sierra Pacific Orthopaedic Center Medical Group CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAIME BARBOSA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SIERRA PACIFIC ORTHOPAEDIC CENTER MEDICAL GROUP, INC.,<br><br>    Defendant and Appellant. | F088971<br><br>(Super. Ct. No. 23CECG04847)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on December 15, 2025, be modified in the following particulars:

1.  On page 11, delete the third full paragraph that begins "Perhaps sensing an evidentiary shortcoming" and insert the following paragraphs in its place:

> SPOC asserts that paragraph 15 of the Johnson declaration supports a finding of interstate commerce. Paragraph 15 states as follows:

> "Plaintiff worked as an x-ray technician for SPOC. Some of the equipment/materials used by Plaintiff to perform his duties for SPOC were purchased from companies located/headquartered in the states of New Jersey and Illinois and shipped to SPOC in California."

However, no specific equipment or materials are identified.  As stated above, simply purchasing some out of state equipment and materials cannot be said to amount to a substantial effect on interstate commerce.  (See *Hoover v. American Income Life Ins. Co., supra,* 206 Cal.App.4th at p. 1208.)

There is no change in the judgment.  Appellant's petition for rehearing is denied.

Snauffer, J.

WE CONCUR:

Hill, P. J.

Meehan, J.

2.

Filed 12/15/25  Barbosa v. Sierra Pacific Orthopaedic Center Medical Group CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAIME BARBOSA, | F088971 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 23CECG04847) |
| SIERRA PACIFIC ORTHOPAEDIC CENTER MEDICAL GROUP, INC., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth, Scott M. Reddie, for Defendant and Appellant.

Wilshire Law Firm, John G. Yslas, Jeffrey C. Bils and Edward Kim, for Plaintiff and Respondent.

-ooOoo-

Jaime Barbosa filed a class action lawsuit against his former employer Sierra Pacific Orthopaedic Center (SPOC).  Barbosa's complaint alleged various causes of action including wage claims, meal and rest claims, and records claims.

SPOC moved to compel arbitration based on "a written contractual agreement signed by" Barbosa invoking both the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and a class litigation waiver.[1] It also moved to dismiss the class claims.

The trial court denied the motions to compel and dismiss. The court reasoned Barbosa's employment insufficiently involved interstate commerce, rendering the FAA inapplicable, and the "class action waiver" was "substantively unconscionable[.]" Barbosa's claims would, accordingly, proceed in court under California law.

On appeal, SPOC contends the FAA, as agreed to in the arbitration agreement, controlled the matter and the FAA consequently demands arbitration. It also argued the class waiver was valid under the FAA.

We conclude Labor Code[2] section 229 permits a dispute as to wages to proceed in court when the FAA does not apply via *preemption,* notwithstanding an explicit agreement the FAA would otherwise govern a dispute. The trial court here ruled there was no preemption because there was "little relationship to interstate commerce[.]" As explained below, we agree with the trial court.

Because SPOC does not challenge the unconscionability finding, we will uphold it, considering any challenge to it forfeited. We will affirm the trial court's order in the disposition.

---

[1] Technically, the arbitration agreement at issue was not signed. A prior version, one that did not mention the FAA or a class litigation waiver, was signed. The trial court held "[t]here [was] no dispute that an agreement to arbitrate exist[ed]." (See *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11 ["California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment."]; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 63 ["A unilateral implied-in-fact arbitration agreement may be enforced against an employee to require the employee to arbitrate all claims against his or her employer."].)

[2] Undesignated statutory references are to the Labor Code.

## BACKGROUND[3]

Barbosa worked at SPOC "as an x-ray technician[.]"  His employment was covered by an arbitration agreement, requiring SPOC and its employees to "resolve any and all disputes … to the fullest extent allowed under the [FAA] and applicable state law not otherwise preempted by the FAA."  The agreement also noted Barbosa could only bring claims "in [his] individual capacity and not as a member of any purported class[.]"

Despite the arbitration agreement, Barbosa filed a class-action lawsuit against SPOC raising claims involving wages, meal and rest periods, and documentation.  SPOC moved to compel arbitration and dismiss the class claims, alleging there existed "a written contractual arbitration agreement[.]"

To support its motion to compel, SPOC filed declarations averring it "provides medical care and related services to individuals in California and various other states," "[m]any" of its "products and equipment" "are purchased" from without the state, and Barbosa used "some … equipment/materials … to perform his [job] duties" that "were [likewise] purchased" from without the state.

Barbosa opposed the motion to compel, arguing "the employment relationship" did not have " 'a specific effect or bear[ing] on interstate commerce in a substantial way,' " rendering the FAA inapplicable.  Section 229 then, he added, permitted him to pursue "wage and hour claims" in court.  Alternatively, he asserted the arbitration agreement was unconscionable.

In reply, SPOC pointed out the arbitration agreement "specifically states that it is governed by the FAA," and its declarations demonstrated a relationship to "interstate commerce."  SPOC also contended the agreement was not unconscionable and the trial court could sever from the agreement any particular unconscionable term.

---

[3] The factual summary is based on filings contained within SPOC's appellate appendix.

The trial court ruled in Barbosa's favor. Answering whether *"[Barbosa's] employment* ha[d] any specific effect or bearing on interstate commerce," it found it bore "little relationship to interstate commerce and [did] not support finding FAA preemption." (Original italics.) The court intimated SPOC's "*business* involve[d] interstate commerce" but explicitly focused instead on Barbosa's *"employment*[.]*"* (Original italics.)

The trial court next assessed unconscionability, concluding "the class action waiver [was] substantively unconscionable" because Barbosa's "class action" "lawsuit … would otherwise be barred" and the waiver was not amenable to "severance[.]" It subsequently denied SPOC's "motion to compel arbitration and dismiss the class claims."

## DISCUSSION

The parties' appellate arguments largely mirror their trial court positions. SPOC argues " 'the FAA … applies if it is so stated in the agreement,' " citing various appellate court cases. It also contends Barbosa's "use of … out-of-state x-ray equipment and materials to perform his everyday duties involved [interstate] commerce" sufficient for the FAA to preempt section 229.

Barbosa counters "private contracts cannot create FAA pre-emptive jurisdiction." He concludes "the trial court correctly found" section 229 applied because the FAA did not preempt the agreement due to the absence of interstate commerce. Neither party addresses unconscionability.

The trial court's conclusion the FAA did not apply in this case because there was insufficient evidence to establish interstate commerce is sound because we find the answer to whether the FAA applies to an arbitration agreement turns on the presence or absence of interstate commerce. An alleged agreement the FAA governs a specific dispute is not itself dispositive. The court's unconscionability finding is not disputed. For these reasons, we will affirm.

4.

## I. The FAA and Section 229

"Section 2, the primary substantive provision of the FAA, provides: 'A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384.) "The FAA thus preempts any state rule discriminating on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.' " (*Kindred Nursing Centers Ltd. Partnership v. Clark* (2017) 581 U.S. 246, 251.)

One such rule discriminating on its face against arbitration is California's section 229. Section 229 permits "[a]ctions … for the collection of due and unpaid wages … without regard to the existence of any private agreement to arbitrate." The FAA's "pre-emptive [and displacing] effect," however, is necessarily curtailed by the federal government's limited power. (See *Perry v. Thomas* (1987) 482 U.S. 483, 489-491 (*Perry*); *Southland Corp. v. Keating* (1984) 465 U.S. 1, 14–15 ["Congress would need to call on the Commerce Clause if it intended the [FAA] to apply in state courts. Yet at the same time, its reach would be limited to transactions involving interstate commerce. We therefore view the 'involving commerce' requirement in [section] 2, not as an inexplicable limitation on the power of the federal courts, but as a necessary qualification on a statute intended to apply in state and federal courts."].) The law unmistakably "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is *not part of a contract evidencing interstate commerce* or is revocable 'upon such grounds as exist at law or in equity for the renovation of any contract.' " (*Perry, supra,* at p. 489, italics added; *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 474 (*Volt*) [FAA applies to contracts "involving interstate commerce"].)

Indeed, although Section 2 of the FAA states it applies to the oft-quoted "contract evidencing a transaction involving commerce," commerce itself is defined in Section 1. Section 1 of the FAA pertinently defines commerce as "commerce among the several States or with foreign nations[.]"

The arbitration agreement in this case, stating disputes were governed "to the fullest extent allowed under the [FAA] and applicable state law not otherwise preempted by the FAA," would incorporate the fact the FAA does not reach beyond interstate commerce, i.e., *intrastate* commerce. Nor would the FAA, absent interstate commerce, preempt California law. Preemption derives its force from constitutional law, not a private agreement between two or more parties. It exists where the Commerce Clause (U.S. Const., Art. I, § 8, cl. 3) combines with the Supremacy Clause (U.S. Const., Art. VI, cl. 2). (*Perry, supra,* 482 U.S. at pp. 489-491 ["under the Supremacy Clause, the state statute must give way"].)

SPOC contends, interstate commerce notwithstanding, "the FAA also applies if it is so stated in the [arbitration] agreement," quoting *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 76 (*Barrera*).) *Barrera,* in turn, cites *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337 (*Victrola*).

*Victrola* held "the presence of interstate commerce is not the only manner under which the FAA may apply. … [T]he parties may also voluntarily elect to have the FAA govern enforcement of" an arbitration agreement. (*Victrola, supra,* 46 Cal.App.5th at p. 355.)

The FAA may apply to an arbitration agreement through an agreement's choice-of-law provision stating as much. But a choice-of-law provision alone does not answer whether the FAA's application to an agreement nullifies a California limitation on

arbitrability. We disagree[4] with *Barrera*[5] and *Victrola* to the extent they suggest such a provision displaces California laws—like section 229—that limit arbitrability. Those decisions contain very little analysis on that point. In our view, *only preemption* may displace such a law. Other portions of the FAA, as elected by the parties, would still apply to the agreement.

Section 229 clearly provides "[a]ctions to enforce … the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." It was enacted "to protect the [individual] worker from the exploitative employer who would demand that a prospective employee sign away in advance his right to resort to the judicial system for redress of an employment grievance."[6] (*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware* (1973) 414 U.S. 117, 131.) The law manifests "an important state policy[.]" (*Id.* at pp. 132-133.) We conclude explicit agreement rendering section 229 inapplicable simply cannot displace the statute which always allows "due and unpaid wage[] claim[s]" to proceed in court despite "the existence of any private agreement to arbitrate." (Cf. Civ. Code, § 3513 ["a law established for a public reason cannot be contravened by a private agreement"].)

---

[4] We also disagree with dicta in *Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934. There, the appellant conceded "her [employment] contract … involved interstate commerce" and thus "the parties' arbitration agreement [was] covered by the FAA." (*Id.* at p. 947.) The reviewing court went on to state "the parties could provide in their arbitration agreement that a dispute regarding unpaid wages—the subject of section 229—is not arbitrable," a statement with which we disagree when applied to cases *not* involving interstate commerce.

[5] The literal verbiage in *Barrera, supra,* also appears but without quotation at *Davis v. Sheikh Shoes, LLC* (2022) 84 Cal.App.5th 956, 963.

[6] Section 229, by its own terms, does not apply to a "collective bargaining agreement containing … an arbitration agreement."

In sum, absent interstate commerce, the FAA does not preempt California law. Nonetheless, because arbitration is purely contractual, parties may choose any jurisdiction's law, e.g., Texas, the FAA, Germany, etc.,[7] to govern their arbitration agreement.  (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 358 ["Arbitration is a matter of consent."]; *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 67 ["arbitration is a matter of contract."].)  But a California law like section 229 would still limit arbitrability.[8]

Properly understood, the question in this case is whether the employment contract between Barbosa and SPOC evidences "a transaction involving [interstate] commerce[.]"[9]  (9 U.S.C. § 2.)  If it does evidence interstate commerce, then the FAA preempts section 229 in this case.  If not, then section 229 prevails.  "The party who claims that a state statute is preempted by federal law bears the burden of demonstrating preemption."  (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 956.)

---

[7] Conceivably, parties could design an entirely new arbitration system.

[8] The California Supreme Court recently declined to consider whether parties could contract to "opt out of" " ' "procedural provisions of the" ' " California Arbitration Act (CAA).  (*Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 326-327.)  Notably, the CAA was enacted in 1961 (Stats. 1961, ch. 461, § 2, p. 1540) whereas section 229 finds its home in the California Labor Code.  Section 229 was enacted in 1959 and is, technically speaking, not part of the CAA.  (Stats. 1959, ch. 1939, § 1, p. 4532.)

[9] Admittedly, the FAA's Section 2 language stating "a contract evidencing a transaction involving commerce" is somewhat obtuse.  How, one might wonder, does an ordinary employment contract evidence a "transaction involving commerce?"  Many employees are, aside from earning wages, not at all engaged in transactions.  But it is indisputable the FAA's coverage encompasses ordinary employment contracts (*Circuit City Stores v. Adams* (2001) 532 U.S. 105, 113-119) partly because "evidencing a transaction involving commerce" is "broadly construe[d]" to give effect to " 'Congress' intent[ion] to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.' " (*Guiliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1286.)  The United States Supreme Court has made clear the FAA applies if "the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection."  (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 281.)

In this case the trial court focused on whether *"[Barbosa's] employment* ha[d] any specific effect or bearing on interstate commerce." (Original italics.) Congress's Commerce Clause power, allegedly flexed through the FAA in this matter, " 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice … subject to federal control.' [Citations.] *Only that general practice need bear on interstate commerce in a substantial way.*" (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56-57 (*Citizens*), italics added; *Evenskaas v. California Transit, Inc.* (2022) 81 Cal.App.5th 285, 293-294 (*Evenskaas*); accord *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 687-688 (*Lane*) ["a petitioner seeking an order to compel arbitration must show that the subject matter of the agreement involves interstate commerce"].)

Whether there is any light between the trial court's analysis—focusing on Barbosa's employment—and the Supreme Court's holding in *Citizens*—looking to "aggregate … economic activity" relative to a " 'general practice' "—is not debated in this case.[10] Assuming, without deciding there is a difference, SPOC failed to establish interstate commerce under any metric.

One might of course wonder, how much interstate commerce is enough? There exist "three broad categories of activity that Congress may regulate under its commerce power." (*U.S. v. Lopez* (1995) 514 U.S. 549, 558 (*Lopez*).) "First, Congress may regulate the use of the channels of interstate commerce." (*Ibid.*) "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce[.]" (*Ibid.*) "Finally, Congress' commerce

---

[10] SPOC specifically disavows *Citizens'* application in this case, focusing instead on whether its submitted "evidence about the nature of its business and the scope of Barbosa's employment … satisfies [a] broad and liberal standard" to establish "interstate commerce."

authority includes the power to regulate those activities having a substantial relation to interstate commerce, [citation], *i.e.,* those activities that substantially affect interstate commerce[.]" (*Id.* at pp. 558-559.)

Neither the channels nor instrumentalities of interstate commerce are at play in this case. Congress's power to regulate the employment contract here derives from its "authority … to regulate … those activities that substantially affect interstate commerce[.]" (*Lopez, supra,* 514 U.S. at pp. 558-559.) " '[A] relatively trivial impact on interstate commerce," on the other hand, "cannot be used as an excuse for broad regulation of state or private activities.' " (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 238.)

To illustrate, the United States Supreme Court found sufficient interstate commerce in the arbitration context where the business operated "throughout the southeastern United States using substantial loans … in part to finance large construction projects in" multiple states. (*Citizens, supra,* 539 U.S. at pp. 56-57.) Significant, too, were the facts its loans were "secured by" its "business assets, including its inventory of goods assembled from out-of-state parts and raw materials," and "the 'general practice' " involved in the matter was "commercial lending[.]" (*Id.* at pp. 57-58; see, generally, *Wickard v. Filburn* (1942) 317 U.S. 111, 115-116 [involving "a compulsory national marketing quota" related to "wheat"]; *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 282 [uncontested and "multistate nature of" business]; *Evenskaas, supra,* 81 Cal.App.5th at p. 288 ["paratransit services … required … by the [federal Americans with Disabilities Act]"].)

In contrast, applying the above framework to this case, SPOC presented superficial and vague evidence regarding interstate commerce. Its evidence—a single declaration—contained no quantifiable or qualitative metric.

SPOC's evidence declared it generally provided nonspecific "medical care and related services" to individuals in California and other states. The statement is insufficient to rationally infer more than a trivial-at-best impact on interstate commerce.

SPOC's declaration also averred "[m]any of the products and equipment SPOC uses to provide its care/services are purchased from" areas outside California, including "[s]ome equipment/materials used by" Barbosa.[11] Without more, simply purchasing out-of-state equipment and materials cannot amount to a substantial effect of interstate commerce. (See *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208 [simple fact "California resident … sold life insurance policies" for Texas business insufficient to prove FAA preemption via interstate commerce].) Nor has SPOC demonstrated the medical industry historically is a practice subject to federal control. (See *Citizens, supra,* 539 U.S. at pp. 56-57.)

Perhaps sensing an evidentiary shortcoming, SPOC's appellate brief states it "purchases its x-ray equipment and materials from out of state." The statement is not supported by the record. Barbosa's characterization in his brief is apt: SPOC's "attempt now to submit belated facts underscores the paucity of [its] evidentiary showing" in the trial court. (See *People v. Carrasco* (2014) 59 Cal.4th 924, 990 [claims " 'raised initially' " on appeal are forfeited].)

In sum, SPOC's submitted evidence is vague, ambiguous, and nondescript. Its singular declaration does not establish the requisite interstate commerce necessary for FAA preemption, i.e., a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. sections 1 and 2. Because the FAA does not apply, section

---

[11] The declarant is Chris Johnston, "Human Resources Manager for" SPOC.

229's limitation on arbitrability applies in this matter.  In other words, wage and hour claims may proceed to court rather than be compelled to arbitration.[12]

## II.  Unconscionability

"The 'general principles of unconscionability are well established.  A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.]  Unconscionability has both a procedural and a substantive element. [Citation.]  The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).)

"Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' " (*Ramirez, supra,* 16 Cal.5th at p. 492.)  "Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results[.]" (*Id.* at p. 493.)  "Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree.  [Citation.]  Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Ibid.*)

---

[12] It is worth mentioning "the plain language of section 229 is limited to actions for the collection of due and unpaid wages brought under sections 200 through 244; section 229 does not apply to *all* statutory wage and hour claims." (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 686.)  "This exemption from arbitration is analyzed on a claim-by-claim basis." (*Betancourt v. Transportation Brokerage Specialists, Inc.* (2021) 62 Cal.App.5th 552, 561.)  Section 229's limited reach is not implicated here, however, because the trial court *also* found the arbitration agreement unconscionable, a conclusion we uphold *post*.

"[T]he 'basic principles of severability that emerge' from the statutes and case law regarding 'illegal contracts [are] fully applicable to the doctrine of unconscionability.' [Citation.] … 'Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.' " (*Ramirez, supra,* 16 Cal.5th at p. 515.)[13]

"[N]o bright line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term. Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term. Instead, the appropriate inquiry is qualitative[.]" (*Ramirez, supra,* 16 Cal.5th at p. 516.) "Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." (*Id.* at p. 517.) "The trial court's decision [on severability] is reviewed for abuse of discretion." (*Id.* at p. 513.)

In this case, the trial court did address severability. Its conclusion the class litigation waiver was unconscionable and not severable is not challenged on appeal. At most, SPOC argues we must reverse the court's "unconscionability finding" *if* we find the FAA applies to Barbosa's employment contract. But we do not find the FAA applies in this case. Because SPOC does not otherwise claim the unconscionability finding is erroneous, we will uphold it considering any such claim forfeited. (See *Ramirez, supra,* 16 Cal.5th at p. 500 [" 'fail[ure] to raise an issue in the opening brief' " generally results in forfeiture]; *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475-476 [forfeiture is proper term in this circumstance].)

---

[13] See Civil Code sections 1598, 1599, and 1670.5.

## **DISPOSITION**

The October 14, 2024, order denying the motion to compel arbitration and dismiss class claims is affirmed.  Appellate costs are awarded to Barbosa.

SNAUFFER, J.

WE CONCUR:


HILL, P. J.


MEEHAN, J.

14.